[Civ. No. 24023. Second Dist., Div. One. July 21, 1960.]

SIGNAL OIL AND GAS COMPANY (a Corporation), Appellant, v. CLIFFORD W. BRADBURY et al., Respondents.

Gordon Boller, H. F. Clary, P. S. Ottoson and F. N. Shumway for Appellant.

Vern B. Thomas, District Attorney, Frank J. McCarthy, Assistant District Attorney, Robert D. Curiel, Dana D. Smith and James R. Christiansen, Deputy District Attorneys, for Respondents.

LILLIE, J.—A petition for writ of mandate was filed in the lower court to compel respondents, Board of Supervisors of Santa Barbara County, to act upon, and either allow or reject certain claims for tax refund filed by appellant; an alternative writ was granted. Respondents demurred to the petition. Holding that the claims, although not in fact acted

upon by the board, were rejected by it through operation of law under section 29714, Government Code, on March 11, 1958, long prior to the filing of the petition, and thus the petition did not state facts sufficient to constitute a cause of action, the lower court ordered the demurrer sustained without leave to amend. It is from the judgment entered on the order that this appeal is taken.

The allegations of the petition, the truth of which for the purpose of the demurrer is conceded, disclose, among other things, that appellant was the owner of four leases from the state for the production of oil and gas from certain tide and submerged lands beneath the ocean in the county of Santa Barbara; that its "mining rights" under the leases were assessed by the county of Santa Barbara each year from 1929 through 1955, and taxes were levied and each year paid by appellant; that taxes collected from appellant for that period on account of the Santa Barbara High School District and Ellwood Union School District were invalid and void, and erroneously and illegally collected because the leased property was situate outside of the boundaries of the school districts and not subject to taxation by them; that within three years after paying the 1952-1953, 1953-1954, 1954-1955, 1955-1956 taxes, and within the time prescribed, appellant on November 30, 1955, and thereafter on April 10, 1956, and November 30, 1956, regularly filed with the board of supervisors verified claims for refund of the school district taxes erroneously collected and paid during those years amounting to a total of $237,644.17, asserting that the seaward boundaries of the school districts did not encompass appellant's oil and gas leases; that as its claims for refund were filed by appellant with the board on December 12, 1955, and thereafter on April 16, 1956 and December 3, 1956, the board referred them to the district attorney of the county of Santa Barbara for study and advice; that appellant's counsel at various times conferred with the district attorney concerning these claims but without result of any kind; that no action having been taken by the board and none forthcoming, appellant, to force board action, finally on April 24, 1958, filed with the board a request and demand for immediate action on pending claims for refund of taxes, which demand the board on May 5, 1958, referred to the district attorney; that after deferring the matter, the board on June 9, 1958, rejected the demand for immediate action and thereafter continued to refuse to act; and pursuant to the advice and recommendation of the district

attorney, the board although continuing to retain appellant's claims has failed and refused to take any action thereon and at no time has either approved or rejected the same. On July 31, 1958, appellant filed this petition for writ of mandate to compel the board to act.

Inasmuch as the question of the illegality of the taxes is in dispute, rejection of the claims must be made by the board before suit to recover can be maintained (*Consolidated Liquidating Corp.* v. *Ford,* 131 Cal.App.2d 576, 579 [281 P.2d 20]). Thus, board action by way of mandate is sought by appellant as the prescribed statutory basis for a suit in the superior court to test the validity of the tax and recover the same if erroneously and illegally collected (Rev. & Tax. Code, §§ 5103, 5104). It is readily apparent that if the board of supervisors is required to take action in this matter, the same will amount to a rejection of appellant's claims.

A considerable portion of respondents' argument relates to factual matters and citation of authority and rules of law going to the merits of the tax controversy, which can arise for legal determination only upon future litigation brought to test the validity of the taxes. The only question before us is whether appellant has a right to a formal rejection of its claims by the board of supervisors. Urging that it has, appellant relies upon the provisions of the Revenue and Taxation Code (div. 1, pt. 9, ch. 5, art. 1, §§ 5096-5107), and in particular on section 5103, which contemplates action by the board in connection with the rejection of tax refund claims; respondents argue that it has not, citing the general claims statute in the Government Code (tit. 3, div. 3, ch. 4, art. 1, §§ 29700-29721), specifically section 29714 providing nonaction of the board to constitute constructive or automatic rejection of a claim against the county on the 90th day. The sole issue, therefore, is whether section 29714 of the Government Code controls the board's consideration of claims for tax refund. If, as urged by respondents, appellant's claims were automatically rejected on the 90th day of the board's failure to act, prior to the time the petition was filed, obviously mandate will not lie and the time permitting a court action to test the validity of the taxes will have long expired. If, on the other hand, appellant's claims are still pending before the board, it may file its action in the superior court within six months of the time the board acts.

At the time the taxes in question were paid and appellant filed its claims for refund with the board of supervisors,

section 29714, Government Code, contained in the general claims statute, provided that anyone who filed a claim against the county *may* treat nonaction by the board as rejection on the 90th day, with the right to sue thereon within six months. Effective September 11, 1957, and while appellant's tax claims were still pending before the board, section 29714 was amended to declare that such 90 days nonaction *shall* constitute final action and rejection on the 90th day. The section further provided that claims already filed 90 days were automatically rejected and it was necessary to sue within six months after the effective date of the amendment. In 1958 the Legislature again amended section 29714 to revive the 90-day optional provision as to contract claims, but it continued the 90-day constructive automatic rejection provision then in effect as to tort claims (§ 29714.1).

 Predicating its decision on the foregoing section of the general claims statute and relying upon *Consolidated Liquidating Corp.* v. *Ford*, 131 Cal.App.2d 576 [281 P.2d 20], for its interpretation thereof, the lower court held that appellant's claims had been automatically rejected on March 11, 1958, by reason of the fact that the board of supervisors had not acted on them by that date, and that the 1958 amendment had not reinstated them. Under this holding the six months' period within which appellant could file a court action to test the validity of the taxes has long since expired and appellant is barred from bringing a suit to recover their refund.

Appellant, who at the outset proceeded for relief under the provisions of the Revenue and Taxation Code, relies upon the specific tax sections found therein, particularly those defining the procedure used for recovery of tax refunds (§§ 5096-5107). These sections provide "(O)n order of the board of supervisors" for refund of taxes "erroneously or illegally collected" (§ 5096); and that "(I)f the board of supervisors rejects a claim for refund . . . the person who paid the taxes . . . may within six months after such rejection commence an action in the superior court . . . to recover the taxes which the board of supervisors . . . have refused to refund" (§ 5103). This, together with the following section (5104) is specific in requiring the board's "rejection" or refusal to refund as a basis for suit. It contemplates rejection by action of the board of supervisors—different from that provided in section 29714, Government Code, resulting through operation of law from 90 days nonaction by the board. There is nothing in the Revenue and Taxation Code relative to the failure of

the board to act; no provision thereunder constitutes nonaction of the board an automatic rejection of a claim, or terminates the rights of the claimant to have its tax refund claim considered and acted upon by the board, or excuses the board from its duty to consider and act upon it. Therefore, to hold that nonaction of the board on the 90th day amounted to a constructive or automatic rejection of appellant's claims on March 11, 1958, we must either determine, under the guise of statutory construction, that the general claims statute, section 29714, Government Code, applies to, and supplements, the tax refund procedure provided in the Revenue and Taxation Code; or accept the general claims statute as governing claims filed with the board of supervisors for refund of taxes. In the light of the legislative history and purposes of the general and tax refund claim statutes and established rules of statutory construction, we deem it unreasonable to write by implication into the special procedure for the refund of taxes defined in the Revenue and Taxation Code, the automatic rejection provision contained in the general claims statute of the Government Code (§ 29714); and construing sections 29700-29721, Government Code, as relating wholly to general claims of a contractual and tortious nature against the county, we do not hold the general claims statute to apply to claims for refund of taxes erroneously and illegally collected, entirely covered in the Revenue and Taxation Code.

Both statutes, constituting two separate and distinct procedures, were originally part of the Political Code—the appropriate sections of the present Revenue and Taxation Code were found in sections 3804 et seq., and those of the Government Code in sections 4075 et seq. Full and complete statutory machinery covering every detail of assessment, equalization, levy and collection of taxes is set out in the Revenue and Taxation Code; and under "Property Taxation," chapter 5, entitled "Refunds," sections 5096 et seq., is defined a special procedure for the presentation to the board of supervisors and their consideration, of claims for the refund of taxes.

■ The tax claim statute was originally enacted to remedy inequities resulting from taxes voluntarily paid by mistake and retained by the county without legal or moral right and the numerous and perplexing obstacles in the way of recovery of taxes thus improperly collected which made the remedy "scarcely worth pursuing." (*Hayes* v. *County of Los Angeles*, 99 Cal. 74, 78 [33 P. 766]). The refund procedure expressly covers taxes paid and collected under certain con-

ditions and in particular those "erroneously or illegally collected" (§ 5096); and specifically provides for submission of refund claims to the board of supervisors (§ 5097 et seq.), refunds and method of payment (§§ 5099, 5101), court action within six months from rejection by the board (§ 5103) and the necessity of a claim for suit (§ 5104). ■ By enacting sections 5096 through 5107, the Legislature established in the Revenue and Taxation Code an entire procedure for the consideration of tax refund claims by the board of supervisors, complete in itself and separate and independent of any other statutory procedure. There exists in this legislative plan no need to resort to separate provisions relating to claims of any other nature.

■ Proceedings for the presentation of general claims against the county, on the other hand, are found in the Government Code, sections 29700 through 29721, known as the general claims statute. In this statute the scope of claims included is declared by sections 29700, 29702, 29704 and 29705, limiting the same to contract claims for service and materials and tort claims; therein no mention is made of tax claims—and well there should not be since our Legislature adequately and completely provided for them elsewhere. The general claims statute expressly relating to contract and tort claims is contained in sections 29700-29721, under "County Government," chapter 4, entitled "Claims." The initial section by its language clearly contemplates claims against the county for services rendered and materials furnished, referring to itemization, etc. (§ 29700); while a subsequent section covers claims "not upon contract" but which by the terms employed therein refers specifically to tortious acts (§ 29705) and has been applied to personal injury suits on account of automobile and other accidents (*Artukovich* v. *Astendorf,* 21 Cal.2d 329 [131 P.2d 831]; *Hochfelder* v. *County of Los Angeles,* 126 Cal.App.2d 370 [272 P.2d 844]). Requiring the filing of a claim and rejection by the board before court action, section 29704 refers to any claim against the county whether founded upon contract, express or implied, or upon any act or omission. Further provisions relate to the form of claim and allowance or rejection and action by the board; and then follows section 29714, constituting a refusal or neglect of the board to act as final action after a period of 90 days, variously amended in 1957 and 1958, and finally repealed in 1959. Any suggestion that this section extends to tax claims, completely provided for in another separate

and distinct code, lacks support within the statute itself, for appearing as it does and in relation to other sections expressly limited to claims of a contractual and tortious nature, and immediately following provisions for their approval or rejection, it is clear that "claim" referred to in section 29714 relates to one of those expressly and specifically described in the preceding sections of the same chapter. Read together, these sections of the Government Code constitute an integrated procedure of which section 29714 is an integral part intended to operate on only those claims specified in the chapter. (*Hochfelder* v. *County of Los Angeles,* 126 Cal. App.2d 370 [272 P.2d 844]). That this was the intention is borne out by the 1958 amendment which expressly made the section applicable to contract (§ 29714) and tort (§ 29714.1) claims. Just as the Legislature intended to constitute certain sections of the Revenue and Taxation Code (§§ 5096-5107) as a complete and exclusive procedure for the presentation of tax refund claims, it enacted the general claims statute of the Government Code to "provide a procedure for claims against counties arising under either contract or tort" (*Albaeck* v. *County of Santa Barbara,* 123 Cal.App.2d 336, 340 [266 P.2d 844]).

This interpretation of the two statutes is not new; it has been recognized by the courts, Legislature, Law Revision Commission and those who have researched the problem. The court in *Birch* v. *County of Orange,* 186 Cal. 736 [200 P. 647], a suit to recover taxes paid under protest, in discussing the necessity for claimants to first present their claims to the board of supervisors under section 4075, Political Code (which preceded § 29700, Government Code) said, in rejecting the applicability of the requirements of this general statute to tax claims, "These are not particulars which would seem to relate to the sort of demand sued on in this action" (pp. 742-743). In 1940, the Supreme Court had occasion to consider at greater length the applicability of the general claims statute (Pol. Code, § 4075) to the refund tax procedure in *Brill* v. *County of Los Angeles,* 16 Cal.2d 726 [108 P.2d 443], involving recovery of taxes based on excessive assessments. The taxes were paid under protest and the court was confronted with the argument that section 4075, requiring filing of a claim before suit, precluded recovery. The court rejected the contention and the applicability of section 4075 to tax refunds and said at page 734: "No claim was required to be filed and under the established principles

mentioned earlier in this opinion this special statute (tax) must be held to prevail over a general claims statute such as section 4075. Particularly, when it is noted that the tax collection and refund provisions appeared in Part III, Title IX of the Political Code entitled 'Revenue' which presented a complete scheme of property tax administration, covering every detail of assessment, equalization, levy, collection and remedies both of the taxpayer and the taxing body—while section 4075 (the predecessor of section 29700, Government Code), appears in Part 4, Title 2, having to do with claims generally against a county and makes no express mention of tax claims elsewhere completely covered. Moreover, much of the language of section 4074-4076, inclusive, is inappropriate and inapplicable to tax claims.'' Continuing further the court relied on the Birch case holding that the collection and refund taxation procedure completely and adequately covered the subject, including the filing of a claim when appropriate, and that ''the provisions of section 4075 as to itemization, etc., of claims are not particulars which would seem to relate to tax claims; . . .'' (P. 735.) Inasmuch as the court recognized the seriousness of the situation created by the necessity of applying a separate and distinct requirement contained in a statute outside of a *special* remedy found in another statute relied upon by another claimant, the court commented at page 736: ''Any other conclusion would deprive the taxpayer of his right to rely exclusively on the provisions of the statute affording him his remedy and would necessitate a search of all other statutes and codes for possible pitfalls with respect to such remedy.''

Respondents complain that the Brill and Birch cases, *supra,* are not applicable and reject the characterization of the general claims statute and its inapplicability to tax claims as declared by the Supreme Court therein, on the ground that they are actions for recovery of taxes paid under protest normally requiring no claim as a basis for suit thus involving a different procedure under the Revenue and Taxation Code. Actually the procedure for ''Payment under Protest and' Suit to Recover'' referred to, is also a part of the chapter entitled ''Refunds'' in which both article 1, sections 5096-5107, here involved, and article 2, sections 5136 through 5143, covering taxes paid under protest, immediately following, are set out. Nevertheless these cases cannot be distinguished on principle from the instant one, for therein the Supreme Court was faced with the same general problem, extensively considered the scope and the purpose of the taxation pro-

cedure and the general claims statute, and setting forth its philosophy on the subject, declared that the former, rather than the latter, control in tax matters.

So, too, this view was recognized in a study and report adopted by the Law Revision Commission in January of 1959 preparatory to a legislative change in the general claims statute. Pressed by the confusion and ambiguity created by numerous local claims procedures, the Legislature consolidated them into a single statutory provision, the Unified Claims Statute (Stats. 1959, ch. 1724). The report, expressly excluding tax refund claims from the provisions of the general claims statute declared at page A-85: ". . . claims for refund of county taxes erroneously or illegally collected are governed solely by the specific procedures of the Revenue and Taxation Code rather than the general county claims procedure." Professor Arvo Van Alstyne, who made the study, in another writing reported: "The only monetary claims not covered by section 29704, for example, are those for which an express or implied statutory exception is available, including tax refund claims . . ." (6 U.C.L.A. L. Rev., p. 229). And neither does the resultant Unified Claims Statute apply to tax refund claims. It expressly excepts "(a) claims under the Revenue and Taxation Code or other statute prescribing procedures for the refund . . . of any taxes . . ." (§ 703). Thus, the new enactment continued the separation which existed in the supplanted statute set up by judicial statutory construction. It also exempted other claims heretofore not included in the general claims statute, dangerous and defective condition claims, claims for principal and interest on bonds, etc. These express exceptions in the new law were intended to, and do, clear the confusion previously conceded by our courts to exist because of numerous claims procedures (*Kenney* v. *Antioch Live Oak School Dist.*, 18 Cal.App.2d 226 [63 P.2d 1143]), and which served as "a trap in which to ensnare unwary citizens for the purpose of depriving them of their lawful claims" (*McCandless* v. *City of Los Angeles*, 10 Cal.App.2d 407, 412 [52 P.2d 545]; *Wood* v. *Board of Police & Fire Pension Commrs.*, 49 Cal.App.2d 52 [120 P.2d 898]; *Stewart* v. *McCollister*, 37 Cal.2d 203 [231 P.2d 48]; *Musto-Kennan Co.* v. *City of Los Angeles,* 139 Cal. App. 506 [34 P.2d 506]).

Nor can we interpolate section 29714, Government Code, as a part of the Revenue and Taxation Code for it is apparent that at no time was it the intention of the Legislature

that it should apply to claims for tax refund. Such lack of intent is found not only in the intentional omission of such a provision, but in the procedure itself, which by its very language contemplates board action—from the initial section providing for refund ''(O)n order of the board of supervisors'' (§ 5096), imposing board action upon refund of taxes erroneously or illegally collected; through section 5103, which implies rejection or refusal by action of the board. Throughout various changes and amendments to the Revenue and Taxation Code, provision was never made in the tax refund procedure for rejection of claims as the result of nonaction of the board of supervisors such as that found in section 29714, Government Code. Sections 5096 et seq. deal extensively with allowance and rejection of refund claims and court action, and in the absence of anything therein to the contrary, the entire procedure, particularly section 5103, contemplates definitive formal action of the board in rejecting tax claims.

On the other hand, the Legislature, from the beginning, saw fit to include in the general claims statute a provision concerning the effect of nonaction by the board (Pol. Code, § 4078, succeeded by Gov. Code, § 29714); and from the numerous changes made in section 29714, it becomes apparent that it considerably bothered the Legislature. It is not as if the provision existed unknown to it, or by inadvertence was retained in the general claims statute, for the Legislature's concern is reflected in a series of amendments occurring in 1957, 1958 and 1959—changing the rejection from optional to mandatory, then to optional in tort claims only, and finally repealing the section entirely, ultimately culminating in a complete omission of any mention of automatic or optional rejection upon nonaction by the board in the new Unified Claims Statute. This new statute declares the duty of the governing body to act on claims filed and so notify the claimants; and it recognizes no situation of nonaction by the board. The Legislature intended to omit this provision in the new act just as it intended to omit such a provision in the Revenue and Taxation Code. Read in conjunction with the purpose of the respective statutes, the basic difference between tax claims (involving mostly legal questions) and general claims (of a more or less factual nature) and the attention paid by the Legislature to section 29714 in the general statute, we can but conclude that the omission of such a provision in the Revenue and Taxation Code was intentional. Thus, we deem it improper to apply section

29714 to tax refund claims and by way of statutory construction, to insert into an already complete procedure in one code intended to operate without supplement or limitation by other statutes, a provision from an entirely different code intended to apply to another separate and distinct class of claims.

The fact that the Legislature included an automatic or constructive rejection in the general claims statute but omitted the same in the procedure used for claims for tax refunds should alone dispose of the matter, under the rule that where a statute on a particular subject contains or omits a particular provision the omission of that provision from, or its inclusion in, another statute concerning the same or a related subject indicates a different intention (*People* v. *Valentine,* 28 Cal.2d 121 [169 P.2d 1]; *Southern Pacific Co.* v. *McColgan,* 68 Cal. App.2d 48 [156 P.2d 81]; *Estate of Simpson,* 43 Cal.2d 594 [275 P.2d 467, 47 A.L.R.2d 991]). The Legislature chose not to include the provision in the Revenue and Taxation Code, an omission entirely consistent with an intent to effect a different application; yet, respondents would have us rewrite the tax refund procedure by adding thereto what the Legislature intended to omit. We find no valid reason for doing this, and indeed, it is not our function to do so (Code Civ. Proc., § 1858), a view similarly expressed by the Supreme Court in *First M. E. Church* v. *Los Angeles County,* 204 Cal. 201 [267 P. 703]; *West Glendale Methodist Episcopal Church* v. *McClellan,* 204 Cal. 697 [267 P. 705], wherein it refused to write into a church exemption statute (Pol. Code, § 3611) a waiver under certain conditions, omitted therefrom, but which waiver provision was expressly included in the sections immediately following (§§ 3612, 3613) providing for veteran and college tax exemptions. The court said at page 204: "But an intention to legislate by implication is not to be presumed. (*Crowell* v. *Gilmore,* 18 Cal. 370.) No very definite reasons are assigned for believing that the Legislature meant to provide by implication that a failure to file the affidavit should result in a waiver of the right provided by the Constitution to tax exemptions." Citing the old case of *People* v. *Buster,* 11 Cal. 215, 221, the court continued at page 206: " 'The omission of this provision in the sections which touch cases like this is significant to show that a different intention existed.' " In *People* v. *County of Imperial,* 76 Cal.App.2d 572 [173 P.2d 352], the county demurred to the state's complaint to collect sales and use taxes on certain sales and purchases made by the county on the ground that it did not allege that the claims had been presented

to it under the general claims statute (Pol. Code, § 4075). The court held section 4075 not applicable and inasmuch as the sales and use tax act contained no such requirement, the general statute would not be drawn on to impose the same. At page 575, the court said "(I)n view of the purpose of these various statutes and of their particular provisions, it must be held that these special taxing statutes control and take priority over the general statute dealing with the filing of claims in ordinary cases." In *Brill* v. *County of Los Angeles,* 16 Cal.2d 726 [108 P.2d 443], is a similar pronouncement, "(W)here a statute provides a special remedy for use in specified cases, a party seeking the remedy is entitled to look to the special statute for a definition of his rights, and a condition not named in the statute need not be satisfied." (P. 732.)

 This brings us to another general rule of statutory construction that as between a special statute dealing with a particular subject and a general statute on the same subject, the former controls (*Albaeck* v. *County of Santa Barbara,* 123 Cal.App.2d 336 [266 P.2d 844]; *Kahrs* v. *County of Los Angeles,* 28 Cal.App.2d 46 [82 P.2d 29]; *Cooper* v. *County of Butte,* 17 Cal.App.2d 43 [61 P.2d 516]). Before us are two statutes on the subject of claims against the county, a statute covering general claims of a contract and tort nature (Government Code), and the Revenue and Taxation Code, governing tax claims. Applying the foregoing rule, as between the Government Code and the Revenue and Taxation Code, the latter must control upon any question relative to a tax claim. Of particular interest at this point is the case most heavily relied upon by respondents, *Consolidated Liquidating Corp.* v. *Ford,* 131 Cal.App.2d 576 [281 P.2d 20], which, incidentally, involved claims for refund of taxes under protest. Among other contentions, the county therein argued that the petitioner's right was barred by limitations under two separate sections—section 29714—as not having been brought within six months after constructive rejection by reason of 90 days nonaction by the board, and section 338, Code of Civil Procedure—as a suit on a liability created by statute and not commenced within three years after the right accrued. The court, assuming section 29714 to be controlling, ruled out the applicability of section 338, Code of Civil Procedure, on the ground that, as a general statute, it (§ 338) did not apply to the refund tax claim procedure, and held at page 579: "Section 338, Code of Civil Procedure, is not applicable to the provisions of the Revenue and Taxation Code, Sections 5096

and 5097. The latter section deals specifically with the refund of taxes 'erroneously or illegally collected.' '' Had the court considered the applicability of section 29714, another general statute, to section 5096 et seq., Revenue and Taxation Code, *a fortiori,* the same conclusion should have resulted. ·Similar was the court's ruling in *People* v. *County of Imperial, supra,* 76 Cal.App.2d 572, citing *Brill* v. *County of Los Angeles,* 16 Cal.2d 726 [108 P.2d 443].

Returning again briefly to the Brill case, *supra,* the court, in discussing the relation of the tax refund provisions to section 4075, Political Code, said at page 736: ''. . . the special remedy for the recovery of taxes is to be free of any requirement contained in Section 4075 for the prior filing of a claim. Any other conclusion would deprive the taxpayer of his right to rely exclusively on the provisions of the statute affording him his remedy and would necessitate a search of all other statutes and codes for possible pitfalls with respect to such remedy.'' It was this kind of uncertainty, confusion and resultant injustice the court spoke out against in *Wood* v. *Board of Police & Fire Pension Commrs.,* 49 Cal.App.2d 52, 57 [120 P.2d 898], and *Stewart* v. *McCollister,* 37 Cal.2d 203, 207 [231 P.2d 48] ; and which seems to characterize the situation in which appellant here finds itself. No claimant acting in good faith should be placed in the position of having to choose the proper section under which to proceed from a variety of separate and distinct statutes at the risk of losing his cause of action entirely if he should make an unwise choice or one that is unsatisfactory to the taxing body. Surely the Legislature did not intend that a tax claimant must search through a hodgepodge of related statutes for a procedure applicable to his need, taking part from one statute and part from another. It intended to, and did, create an entire and complete procedure in one place in the codes where it could easily be found and safely relied upon. To here hold otherwise would be to perpetrate the injustice against which our courts have sought to guard—loss of a substantive right.

Cited by respondents as here controlling, and upon which the lower court's decision is based, is the case of *Consolidated Liquidating Corp.* v. *Ford,* 131 Cal.App.2d 576 [281 P.2d 20]. In its order, the lower court properly conceded that the remedy sought by appellant is that provided under sections 5096-5107, Revenue and Taxation Code. However, without discussion of the applicability of the general claims statute tax refund procedure, it employed section 29714, taking its

applicability for granted, and interpreted the same to outlaw appellant's claims on the theory that nonaction of the board constituted an automatic rejection thereof on March 11, 1958. At the conclusion of its written order, the lower court stated: ''This entire discussion of the points involved in respondents' demurrer has taken for granted that the provisions of section 29714 of the Government Code apply to actions for tax refunds. The reason that the court feels that the section does apply is because in the case of *Consolidated Liquidating Corp.* v. *Ford,* 131 Cal.App.2d 576, at 579 [281 P.2d 20], that was the contention.''

An analysis of the decision in *Consolidated Liquidating Corp.* v. *Ford,* 131 Cal.App.2d 576 [281 P.2d 20], discloses neither such contention concerning the applicability of section 29714 to tax refunds was made, nor was such issue discussed by the court. The court therein, as did the trial court here, took for granted that the section applied and decided the case wholly upon its interpretation of section 29714. The question before the court in the Consolidated Liquidating Corporation case was not whether section 29714 was applicable, but the proper interpretation thereof—whether the same provided for optional or automatic rejection. Having declared it to be optional, the ruling disposed of the matter and the court did not actually consider whether section 29714 applied to tax claims. Had it done so, we feel that the court, to be consistent within its opinion, would have been forced to conclude otherwise, in accord with its pronouncement that the general statute contained in section 338, Code of Civil Procedure, did not prevail over the specific statute in the Revenue and Taxation Code, providing for tax refunds. In citing the case of *Hochfelder* v. *County of Los Angeles,* 126 Cal.App.2d 370 [272 P.2d 844], it is not as if the court misapplied the latter case as suggested by appellant, even though it involved a tort normally falling within the scope of section 29714, for the case was utilized pure and simple for an interpretation of section 29714, which it so adequately discussed. The court in the Consolidated Liquidating Corporation case did not resort to the Hochfelder case for the determination of any issue relating to the applicability of section 29714 to tax refund claims for no such issue was discussed by the court; and moreover the section was clearly applicable in the Hochfelder case, the claim arising out of tort. Had it done so the Hochfelder case could not well have controlled the issue, for general claims, including tort, are entirely separate and distinct from claims for tax

refund under section 5096; moreover it seems that the court, having ruled as it did in connection with section 338, Code of Civil Procedure, a general statute, precluded itself from a contrary ruling in connection with section 29714, another general statute.

The lower court in the instant case commented that the court in *Consolidated Liquidating Corp.* v. *Ford*, 131 Cal.App.2d 576 [281 P.2d 20], could have said that the section has no application to tax refund claims, but instead analyzed section 29714. The fact is apparent that having interpreted the language of section 29714 to be optional and not having declared constructive rejection of the claims which were then still pending, it was unnecessary to proceed further, for the result would have been the same had it decided section 29714 to be inapplicable. There are several reasons why we cannot read the Consolidated Liquidating Corporation case as authority in the instant one; and why it has little or no bearing on the issue before us. At the outset, the court therein proceeded on the assumption that section 29714 applied, and an assumption can hardly constitute a declaration that the statute was applicable; no issue relative to its applicability to tax refund claims was discussed or determined by the court and if it can be said that the court therein relied on the Hochfelder case for other than an interpretation of the section, then because of the factual distinction in the Hochfelder case, the Consolidated Liquidating Corporation case becomes less than authority for the one at bar.

Although urged upon us to sustain the lower court's judgment and characterized by respondents as ''(e)very case which has dealt with the matter,'' are *Perrin* v. *Honeycutt* (1904), 144 Cal. 87 [77 P. 776]; *Murphy* v. *Bondshu* (1905), 2 Cal.App. 249 [83 P. 278]; *Slade* v. *County of Butte* (1910), 14 Cal.App. 453 [112 P. 485]; *Hayes* v. *County of Los Angeles* (1893), 99 Cal. 74 [33 P. 766]; and *Farmers etc. Bank* v. *City of Los Angeles* (1907), 151 Cal. 655 [91 P. 795]. Contrary to respondents' assertion, these cases neither deal with the precise issue here under discussion, nor ''apply'' the provisions of section 29714 to tax refund claims. The *Farmers etc. Bank* v. *City of Los Angeles*, 151 Cal. 655 [91 P. 795], involving the provisions of a city charter and a correlative dependent city ordinance, and later disavowed in *Brill* v. *County of Los Angeles*, 16 Cal.2d 726 [108 P.2d 443] and *Birch* v. *County of Orange*, 186 Cal. 736 [200 P. 647], we cannot read as controlling on the issue before us

that section 29714 applies to tax refund claims under the Revenue and Taxation Code. The general language found in the cases relied on by respondents is far from persuasive in the light of the history, nature and purpose of the general and tax refund claim statutes, the intentional legislative omission in the latter of any provision similar to section 29714, Government Code, and the basic rule of statutory construction actually recognized and followed in *Consolidated Liquidating Corp.* v. *Ford*, 131 Cal.App.2d 576 [281 P.2d 20].

The matter of laches urged by respondents at this time can apply only to any delay in filing the petition for the writ of mandate—the only matter before us. Respondents have indulged in an extensive discussion relative to the fault, delay or neglect of appellant in waiting so long to discover that its leased property was outside of the school districts, the prejudice thereto from appellant's right to refund, laches with regard to assessment and taxation, and other matters going entirely to the merits of the tax controversy, such as the school districts' jurisdiction, or laches against appellant raising the question of the validity of the tax, and a myriad of cases going to those issues which are not here involved. Reviewing the conduct of appellant in the presentation of its claims to the board of supervisors and in filing the petition for writ of mandate, and considering the rule that the applicability of the doctrine of laches depends upon the facts and circumstances of each case (*Griffin* v. *International Longshoremen's etc. Union*, 109 Cal.App.2d 823, 825 [241 P.2d 552]), we find no unreasonable delay in bringing this suit to compel board action which could be charged as laches against appellant.

Appellant, since 1929, and each year thereafter to and including 1955, regularly paid the taxes here subject to controversy, having then no reason to believe them to be other than valid. Sometime in the latter part of 1955, appellant, in its interpretation of the boundaries of the school districts, discovered that its oil leases were not within them and beyond the jurisdiction of the school districts to tax and realized that for the last 26 years it had been paying an invalid tax. Although any refund of taxes paid by it for the earlier 22 years was barred under the Revenue and Taxation Code, it immediately, upon discovery, in 1955 and 1956, filed with the Board of Supervisors of the County of Santa Barbara claims for refund for the preceding four years. Of course, implicit in each claim was a demand for the board to either allow a re-

fund to be paid or to reject the same, and until acted upon constituted a continuing request for consideration and action of the board. Knowing that the district attorney represented and advised the board, appellant's counsel had numerous conferences with him concerning consideration of the claims, but to no avail. Either acting upon the advice of the district attorney or singularly dilatory in its conduct, or for whatever reason, the board never acted upon appellant's claims. Believing in good faith that the tax refund claims were governed by the special procedure provided in the Revenue and Taxation Code, and that it could properly allow the board all the time necessary for its fullest consideration, it permitted a full measure of time for this and the board's responsible action. Having felt that it had waited long enough for an adequate study of the factual and legal questions involved and for whatever investigation was necessary, appellant finally in April of 1958, in writing, demanded that the board take some action; but on the advice of the district attorney the demand was rejected and the board continued in its failure to act and retained the claims without action thereon.

We fail to see where appellant has neglected to bring the matter to the attention of the courts in a timely manner. Within a short time after it finally suspected that the board did not intend to act (June 9, 1958), appellant, 51 days later, on July 31, 1958, filed the instant petition. The record before us shows a constant, continuing concern of the appellant for a determination of the pending claims so that it could exercise its rights to file suit to test the validity of the tax. When it first discovered its position, appellant immediately filed its claims, the last on November 30, 1956. We are at a loss to know how appellant could have, without further prejudicing itself, any more urgently requested board action. We are aware of no duty of the board to act at once or at any particular time after claims have been filed. The board, after the filing of the last claim, was entitled to time within which to investigate the claims, discuss them, obtain legal advice and consider the same. Appellant at all times was active in connection with its claims and did what it could with propriety to enforce action. We can but assume that the board during the time the claims were pending before it was giving them due study and consideration; and without a showing, we cannot conclude that during that time the board was negligent or dilatory, or failed to act in a way as to intentionally

destroy appellant's right to sue. Not until June 9, 1958, after having been forced by appellant to take a stand, did the board indicate that it was not going to act on the claims before it, and then appellant had nothing on which to proceed except the denial of the demand to act on pending claims. There appear to be no laches chargeable to appellant that would bar the instant proceedings.

For the foregoing reasons the judgment is reversed.

Fourt, J., concurred.

Wood, P. J., concurred in the judgment.

A petition for a rehearing was denied August 18, 1960. Wood, P. J., was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied September 14, 1960.