97 Cal.Rptr.2d 92 (2000)
81 Cal.App.4th 658
GENEVA TOWERS LIMITED PARTNERSHIP, Plaintiff and Appellant,
v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.
No. A088355.
Court of Appeal, First District, Division Five.
June 14, 2000.
Review Granted September 27, 2000.
*93 Divelbiss, Divelbiss & Bonzell, LLP, Robert Divelbiss, Mark J. Divelbiss, San Francisco, Robert S. Beach, for Plaintiff/Appellant.
Louise H. Renne, City Attorney, Patrick J. Mahoney, Chief Trial Attorney, Jeffrey I. Margolis, Deputy City Attorney, for Defendant/Respondent.
STEVENS, J.
This appeal presents a question of first impression regarding the time period for filing a tax refund lawsuit under Revenue and Taxation Code section 5141, subdivision *94 (b),[1] when a board of supervisors has failed to act on the underlying tax refund claim.
Appellant Geneva Towers Limited Partnership (Geneva) appeals from a dismissal of its first amended complaint after the trial court sustained respondent's demurrer without leave to amend under section 5141. Geneva's first amended complaint is time-barred under Code of Civil Procedure section 343, and we therefore affirm the judgment.

I. FACTS AND PROCEDURAL HISTORY

In January 1999, Geneva filed a lawsuit against respondent City and County of San Francisco (City), seeking recovery of excess taxes Geneva allegedly paid on real property located in the City.
According to the first amended complaint, Geneva became the owner of a low-income housing project in the City in 1987. As a result of the change in ownership, the San Francisco County Assessor reassessed the property and set a new base-year value of $22,888,888 pursuant to section 75.10. Geneva appealed the assessment to the assessment appeals board, which reduced the base-year value to $10,343,712. Believing the reduced assessment was still too high, in November 1991 Geneva submitted a claim for refund to the City's board of supervisors (Board), seeking a refund of approximately $4.6 million in purportedly excess taxes collected for tax years 1987-1988 through 1990-1991. The Board received the claim on November 27, 1991. The first amended complaint does not specifically state whether the Board ever acted on the claim for refund, but instead alleges "[n]o refund of taxes or any part thereof has been made to any of the Plaintiffs or anyone acting on their behalf for any of the years in dispute."
The City filed a demurrer to Geneva's first amended complaint, claiming it was barred by the statute of limitations. The trial court sustained the demurrer without leave to amend, finding that there was a limitations provision in section 5141 that barred the action. This appeal followed.

II. DISCUSSION

The issue presented is whether the first amended complaint is barred by section 5141, or another limitations period, as a matter of law.[2]

A. STANDARD OF REVIEW
On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, we accept as true those facts alleged in the pleadings and any facts that may be implied or inferred therefrom. (Marshall v. Gibson, Dunn & Crutcher (1995) 37 Cal.App.4th 1397, 1403, 44 Cal.Rptr.2d 339.) A demurrer based on statute of limitations grounds will lie only if the defect clearly and affirmatively appears on the face of the complaint. (Ibid.) Where, as here, the appeal centers on an interpretation of the statute, we review the trial court's interpretation de novo. (Jefferson v. Compton Unified School Dist. (1993) 14 Cal.App.4th 32, 38, 17 Cal.Rptr.2d 474; Mission Housing Development Co. v. City and County of San Francisco (1997) 59 Cal.App.4th 55, 73, 69 Cal.Rptr.2d 185.)

B. SECTION 5141
Under article XIII A of the California Constitution, real property taxes are based on the county assessor's valuation of the property as shown on the property's 1975-1976 tax bill, or, thereafter, the appraised value of the property when purchased, newly constructed, or a change in ownership has occurred after 1975. (Cal. Const., *95 art. XIII A, §§ 1, subd. (a); 2, subd. (a).) The appraised value is known as the "base[-]year value" for the property. (§ 110.1, subd. (b).) Subsequent increases in the base-year value are limited to a maximum of 2 percent per year. (Cal. Const., art. XIII A, § 2, subd. (b); §§ 51, 110.1, subd. (f).)
A taxpayer seeking review of a base-year value faces a three-step process. First, the taxpayer may seek a reduction from the assessment appeals board. (§§ 80, subd. (a)(3); 81.) If that challenge is unsuccessful, the taxpayer may file a claim for refund with the county board of supervisors. (§ 5096 et seq.) If the board challenge is unsuccessful, the taxpayer may obtain judicial review by filing a complaint for refund with the superior court. (§ 5140 et seq.)
Section 5141, subdivision (a), sets forth the time period in which a complaint for refund under section 5140 may be brought: "An action [for a tax refund] ... shall be commenced within six months from and after the date that the board of supervisors or city council rejects a claim for refund in whole or in part." In addition, section 5141, subdivision (b), gives a claimant the opportunity to file suit if the board has not timely rejected the claim: "if the board of supervisors or city council fails to mail notice of its action on a claim for refund within six months after the claim is filed, the claimant may, prior to mailing of notice by the board of supervisors or city council of its action on the claim, consider the claim rejected and bring an action under this article." (Italics added.)
By the Legislature's use of the permissive word "may" in section 5141, subdivision (b), a claimant has the option of considering the claim rejected, and suing the county for the refund, if the board takes no action within six months after filing. (§ 5141, subd. (b).) The parties argue about two facets of lawsuits brought under section 5141, subdivision (b): the point at which the limitations period for filing such a lawsuit begins to run, and the length of time in which the taxpayer must file the lawsuit. The parties do not cite, and we have not found, a published decision addressing these aspects of section 5141.

C. THE COMMENCEMENT OF THE LIMITATIONS PERIOD
To address the first of these arguments, we start with the well-established rule of statutory construction that we are to ascertain the intent of the Legislature so as to effectuate the purpose of the law. This is accomplished by turning first to the statutory language, giving effect to the ordinary meaning of the words employed. (Robert F. Kennedy Medical Center v. Belské (1996) 13 Cal.4th 748, 756, 55 Cal.Rptr.2d 107, 919 P.2d 721 (Robert F. Kennedy ).) "`Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.'" (Ibid.) We are to apply a reasonable and common sense interpretation, avoiding absurdity. (See DeYoung v. City of San Diego (1983) 147 Cal.App.3d 11, 18, 194 Cal.Rptr. 722, overruled on other grounds, Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 78 Cal.Rptr.2d 1, 960 P.2d 1031.)
The language of the statute is only susceptible to one reasonable and common sense interpretation. Section 5141, subdivision (b) provides that a taxpayer "may ... consider the claim rejected and bring an action under this article." (Italics added.) It follows that the limitations period could not commence any earlier than six months, because an action could not be filed before it is statutorily permitted. Likewise, the limitations period could not commence after six months, because no lawsuit could be filed before the claim accrues. (Code Civ. Proc., § 312 [civil action may only be brought "after the cause of action shall have accrued"]; see, e.g., Romano v. Rockwell Internal, Inc. (1996) 14 Cal.4th 479, 488-490, 59 Cal.Rptr.2d 20, *96 926 P.2d 1114.) Thus, although not expressly stated, the statute of limitations can only be interpreted to commence six months after a claim under section 5141, subdivision (b) is filed.
The parties have stressed that we apply other rules of statutory interpretation. While we find these rules unnecessary to our analysis, their application would nevertheless reach the same result. Legislation such as section 5141, requiring the presentation of claims to a board of supervisors as a condition of filing suit, has several purposes. It gives the board of supervisors an opportunity to investigate the allegations in a timely manner, permits the parties to reach an amicable resolution without unnecessary expenditure of public funds on litigation costs, and allows the body responsible for making fiscal preparations to be informed of potential indebtedness. (See Hochfelder v. County of Los Angeles (1954) 126 Cal.App.2d 370, 374, 272 P.2d 844 (Hochfelder); see generally Kuykendall v. State Bd. of Equalization (1994) 22 Cal.App.4th 1194, 1202-1203, 27 Cal.Rptr.2d 783 [statutes governing tax refund procedures are designed to permit governmental entities to engage in fiscal planning based on expected tax revenues]; State of California ex rel. Dept. of Motor Vehicles v. Superior Court (1998) 66 Cal. App.4th 421, 426, 78 Cal.Rptr.2d 88 [same].) The legislative purpose behind statutes of limitation, in general, is to prevent plaintiffs from asserting stale claims. At the same time, public policy favors the resolution of claims on the merits. Consequently, the resolution of an issue concerning a limitations period requires a court to strike a balance "between the public policy favoring extinction of stale claims and that favoring resolution of disputes on their merits." (Samuels v. Mix (1999) 22 Cal.4th 1, 13, 91 Cal.Rptr.2d 273, 989 P.2d 701.)
Appellate cases construing similar limitation issues offer insight into how we may balance these competing public policies. For example, in State Dept. of Pub. Health v. Imperial (1944) 67 Cal.App.2d 244, 153 P.2d 957 (Imperial), a claim was filed with a county board of supervisors for reimbursement of certain medical expenses. The board of supervisors took no action. Ten years later, the claimant filed suit to recover the amount of the medical expenses sought in the claim. The claimant relied on former Political Code section 4078 (since repealed), which provided that the refusal or neglect of the board to act on the claim "`may, at the option of the claimant, be deemed equivalent to a final action and rejection on the ninetieth day,'" and that the claimant "`may sue the county therefor at any time within six months after the final action of the board, but not afterward.'" (Imperial, supra, at p. 246, 153 P.2d 957.) The court rejected the claimant's argument that the six-month limitations period did not commence until the claimant exercised the option to consider the claim as having been rejected. Instead, it was ruled, the time to file suit would begin to run "`on the ninetieth day,'" which was the first day the board's failure to act could be deemed a rejection and, thus, the first day the claimant could bring a lawsuit. The court explained that the purpose of former Political Code section 4078 was to "prevent a situation where the board, by its failure to act, could indefinitely postpone a claimant's right to bring an action," but not to give the claimant an unlimited time within which to bring a lawsuit. (Imperial supra, at pp. 246-248,153 P.2d 957.)[3]
Geneva contends that it could deem its claim rejected, and commence the limitations period, at any timewhether it be 1, 2, or 100 yearsafter the six months following the filing of the claim. This interpretation would have the limitations period *97 commence on the day the lawsuit is filed, rendering it not a limitations period at all. In addition, Geneva's position obviously throws the door wide open to the litigation of stale (if not ancient) claims. Under the reasoning in Imperial, it is appropriate instead that the limitations period for a lawsuit brought pursuant to section 5141, subdivision (b), commence on the first day on which the claimant could file suit without board action: i.e. six months after the refund claim was filed. In this manner, the taxpayer may file suit and avoid having his claim delayed indefinitely by the county's inaction, thereby promoting the public policy of adjudicating causes on their merits. At the same time, this result avoids the absurdity of Geneva's position, serves the public policy of preventing stale claims, and preserves the board of supervisors' opportunity to investigate refund claims in a timely and meaningful manner.
Accordingly, the statute of limitations period for an action filed under section 5141, subdivision (b), commences six months after the refund claim was filed with the board of supervisors.

D. THE LENGTH OF THE LIMITATIONS PERIOD
The parties' second argument presents a more salient issue: how much time a claimant has to file suit after deeming the board's inaction as a rejection under section 5141, subdivision (b). Our starting point is Code of Civil Procedure section 312, which mandates: "Civil actions, without exception, can only be commenced within the periods prescribed in [Code Civ. Proc., §§ 312-366.2], after the cause of action shall have accrued, unless where, in special cases, a different limitations is prescribed by statute."
It is clear from the face of section 5141 that no limitations period is set forth for lawsuits filed under section 5141, subdivision (b). In particular, nothing in section 5141 suggests the Legislature intended to apply the six-month limitations period in section 5141, subdivision (a), to lawsuits brought under section 5141, subdivision (b). To reach such a conclusion would require reading language into the statute that is simply not there, which we decline to do. (Rodeo Sanitary Dist, v. Board of Supervisors (1999) 71 Cal.App.4th 1443, 1452, 1454, 84 Cal.Rptr.2d 601.)
Because section 5141 fails to specify a limitations period for lawsuits filed under section 5141, subdivision (b), we select the appropriate limitations period from the Code of Civil Procedure. (Code Civ. Proc., § 312.)[4] Because the Code of Civil Procedure does not specifically prescribe a period for the commencement of an action brought under section 5141, subdivision (b), we are directed to Code of Civil Procedure section 343, Witch reads: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." As we have explained ante, Geneva's cause of action accrued in May 1992, six months after it filed its claimwhich was the first day Geneva could file suit under section 5141, subdivision (b).[5] More than six *98 years passed before Geneva filed its complaint against the City. Under Code of Civil Procedure section 343, Geneva's complaint is time-barred.
Neither Geneva nor the City offers a persuasive argument for a limitations period other than Code of Civil Procedure section 343. First and foremost, Code of Civil Procedure section 312 clearly mandates a limitations period set forth in the Code of Civil Procedure where, as here, a different limitations period is not statutorily prescribed elsewhere. In addition, the parties' respective proposals would yield results antithetical to the policy goals behind limitations periods. Geneva's open-ended approach under section 5141 would provide an indefinite and unpredictable timeframe for the initiation of litigation arising out of a tax refund claim. The City's approach, applying the six-month limitations period for the filing of a lawsuit upon the formal rejection of a refund claim (§ 5141, subd. (a)), would unduly or unexpectedly constrain a claimant's opportunity to file an action under section 5141. It is one thing to impose a six-month limitations period that commences upon the actual denial of a claim, as with lawsuits brought under section 5141, subdivision (a). It is quite another thing to impose such a short period that begins to run upon the expiration of the time for board action, of which the claimant does not receive formal notice. A longer limitations period would better protect the claimant's interest in obtaining an adjudication on the merits. At the same time, it would not compromise the interests of the county board, since a county board can commence the running of the six-month limitations period by acting on the refund claim. (§ 5141, subd. (a).) Indeed, a longer limitations period might encourage a county board to act more diligently on refund claims.[6]
To the extent that Geneva relies on Hochfelder, supra, 126 Cal.App.2d at pp. 375-377, 272 P.2d 844 and Consolidated Liquidating, supra, 131 Cal.App.2d at pp. 578-580, 281 P.2d 20, to argue that its complaint is timely under section 5141, subdivision (b), its reliance is misplaced. Both cases involved former Government Code sections 29714 and 29715, by which a claimant could treat the board's failure to act on a claim within 90 days as a rejection and file a lawsuit within six months thereafter, or could file a complaint for refund within six months after the board's denial of the claim. In Hochfelder, a claim was filed with a county board of supervisors, the board denied the claim a year later, and the claimant brought a lawsuit less than six months thereafter. Because the claimant was not required to deem the board's inaction as a denial, the court rejected the county's argument that the claimant's failure to file the lawsuit within six months of the 90th day after filing the refund claim barred the complaint.
In Consolidated Liquidating, supra, a tax refund claim was also filed, but the board failed to act within 90 days. The claimant filed a request with the board for immediate action on the claim, but the board denied the request as untimely, because *99 more than six months had passed since the 90th day after the refund claim was filed. The court concluded the request was timely, again because the claimant was not required to treat the board's inaction as a rejection. Both Hochfelder and Consolidated Liquidating are factually distinguishable from the present case in that the claimant did not opt to deem a board's inaction to be a rejection, but chose instead to await the actual denial of the claim by the board.
Finally, insofar as the City argues that a refund claim must be deemed rejected under section 5141 if not acted upon within six months after filing, the City is incorrect. (Hochfelder, supra, 126 Cal.App.2d at p. 375, 272 P.2d 844.) The statutory language that a taxpayer may file a lawsuit if his or her claim is not acted upon within six months after filing cannot reasonably be read to also create an automatic rejection of that claim. If such was the intent of the Legislature, it could hardly have chosen less precise language to do so. It is simply not reasonable to create such a result from words that are completely clear as to their scope and meaning. (See Robert F. Kennedy, supra, 13 Cal.4th at p. 756, 55 Cal.Rptr.2d 107, 919 P.2d 721 [clear statutory language may not be altered to accomplish a purpose that does not appear on the face of the statute or in legislative history]; Hochfelder, supra, at p. 375, 272 P.2d 844.)[7]
We therefore conclude that the four-year limitations period of Code of Civil Procedure section 343, not the six-month limitations period of section 5141, subdivision (a), governs the time by which a claimant must file a lawsuit under section 5141, subdivision (b). Although the trial court found Geneva's lawsuit time-barred under section 5141, instead of Code of Civil Procedure section 343, we nevertheless affirm the lower court's ruling because it reached the correct result.[8] (See D'Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 19, 112 Cal.Rptr. 786, 520 P.2d 10 [trial court decision yielding correct result must be sustained on appeal if supported by any applicable legal theory].)[9]

III. DISPOSITION

The judgment of dismissal is affirmed.
JONES, P.J., and KRAMER, J.[*], concur.
NOTES
[1] Unless otherwise indicated, all further section references are to the Revenue and Taxation Code.
[2] Geneva did not seek leave to amend its first amended complaint in the trial court, and it does not assert here that it could allege additional facts or that the trial court should have granted leave to amend.
[3] Political Code section 4078 was repealed and replaced by Government Code section 29714. (Stats. 1947, ch. 424, § 1, p. 1236; see Consolidated Liquidating Corp. v. Ford (1955) 131 Cal.App.2d 576, 579, 281 P.2d 20 (Consolidated Liquidating).) Government Code section 29714 was repealed by Stats. 1959, ch. 1725, § 1, p. 4138.
[4] Relying on Signal Oil & Gas Co. v. Bradbury (1960) 183 Cal.App.2d 40, 6 Cal.Rptr. 736 (Signal Oil), Geneva asserted at oral argument that limitations periods set forth in the Code of Civil Procedure could not be applied to lawsuits brought under section 5141. Geneva misreads Signal Oil, because that decision stands for the proposition that the general statutes governing claims against public entities (former Gov.Code, § 29700 et seq.), including a provision by which a board's inaction would automatically be deemed a rejection, did not apply to the procedure for presentation of a tax refund claim, which was governed by its own specific, separate and exclusive statutory scheme. (Signal Oil, supra, at pp. 46-47, 6 Cal.Rptr. 736.) Here, we do not incorporate a mandatory constructive rejection rule from another statute to change the structure of the tax refund claim procedure. Rather, we follow the dictate of the Legislature to apply the four-year limitations period of Code of Civil Procedure section 343, because no other statute sets forth an applicable limitations period. (Code Civ. Proc., §§ 312, 343.)
[5] As the City points out. Geneva did not specifically allege that the Board failed to act on Geneva's claim for refund. However, it is reasonable to draw that inference from Geneva's pleadings, "[n]o refund of taxes or any part thereof has been made to any of the Plaintiffs or anyone acting on their behalf for any of the years in dispute."
[6] This result is consistent with the approach taken by the Legislature in the Tort Claims Act. Under Government Code section 912.4, a claim against a public agency is to be determined by its governing board within 45 days after filing. (Gov.Code, § 912.4, subd. (a).) If it is not, the claim is deemed denied (Gov. Code, § 912.4, subd. (c)), and the claimant may file a lawsuit within the time period prescribed by Government Code section 945.6. (Code Civ. Proc., § 342.) Government Code section 945.6 requires the lawsuit to be brought within six months after written notice of the board's action or inaction or within two years from the accrual of the cause of action if notice was not given. (Gov.Code, § 945.6, subd. (a).) The Legislature apparently recognized the need for a lengthier limitations period where, as here, a claimant does not receive written notice of the board's inaction.
[7] An example of how the Legislature articulates an automatic rejection of a claim against a public agency is found in Government Code section 912.4. Under Government Code section 912.4, a claim that is not determined by the governing board within 45 days after filing is "deemed to have been rejected by the board." (Gov.Code, § 912.4, subd. (c), italics added).
[8] The City also urges us to uphold the trial court's decision under the doctrine of laches. We need not reach the issue in light of our decision on other grounds.
[9] The City's demurrer merely alleged that Geneva's complaint was "barred by the applicable statutes of limitations." Pleading a statute of limitations defense requires specifying the particular section and subdivision of the Code of Civil Procedure which bars the claim. (Code Civ. Proc., § 458.) Although a demurrer is a pleading (Code Civ. Proc., § 422.10), courts are split on whether a demurrer is deficient if it fails to specify the applicable statute of limitations. (See, e.g., Zakaessian v. Zakaessian (1945) 70 Cal.App.2d 721, 725, 161 P.2d 677 [not sufficient]; Williams v. International Longshoremen's & Warehousemen's Union (1959) 172 Cal.App.2d 84, 87, 341 P.2d 729 [sufficient].) In the present case, however, Geneva did not assert that the demurrer was insufficient on this basis. Perhaps this was because Geneva had notice that Code of Civil Procedure section 343 was among the statutes on which the City was relying, since the City's opening memorandum of points and authorities cited to section 5141 and Code of Civil Procedure section 339 (but quoted from Code Civ. Proc., § 343, not Code Civ. Proc., § 339), and its reply memorandum relied on section 5141 and Code of Civil Procedure sections 338 and 343.
[*] Judge of the San Francisco Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.