[No. B055961. Second Dist., Div. Four. Aug. 20, 1992.]

PALMDALE HOSPITAL MEDICAL CENTER et al., Plaintiffs and Respondents, v.
DEPARTMENT OF HEALTH SERVICES, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, Stephanie Wald and Harlan E. Van Wye, Deputy Attorneys General, for Defendant and Appellant.

Hooper, Lundy & Bookman and Patric Hooper for Plaintiffs and Respondents.

## OPINION

EPSTEIN, J.—The California Department of Health Services (Department) appeals from a judgment granting a peremptory writ of mandate. The writ prohibits the Department from altering its final Medi-Cal settlements with plaintiffs Palmdale Hospital Medical Center and Vista Hill Hospital because the Department's adjustments were made more than three years after the hospitals submitted cost reports. We reach the merits of the case after deciding that the Department is not collaterally estopped from challenging this ruling by a previous adjudication against the Department, on the same issue but in another action involving a different health care facility. On the merits, we conclude that the three-year period in Welfare and Institutions Code section 14170 applies only to the Department's audit or review of the cost report of a Medi-Cal provider, and is not a general statute of limitations applicable to the final determination of the amount of reimbursement due to the provider. For this reason, the Department was not precluded from adjusting the amount of reimbursement due to the hospitals after the three-year period had expired. We therefore reverse the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

Plaintiffs are acute care hospitals providing inpatient services under the Medi-Cal program. This case concerns the finality of the determination of reimbursement owed to the hospitals for the Medi-Cal services provided during the fiscal years 1983 and 1984.

In May 1984, Palmdale Hospital Medical Center submitted its Medi-Cal cost report to the Department for the fiscal period ending April 30, 1983. On August 6, 1986, the Department issued its audit report for that fiscal period, reflecting audit adjustments and an audited Medi-Cal reimbursement settlement.

In April 1985, Palmdale submitted its Medi-Cal cost report for the fiscal period ending April 30, 1984. The Department issued its audit report for that period on January 14, 1988, reflecting audit adjustments and an audited reimbursement settlement.

On February 10, 1989, the Department issued a determination of Palmdale's Medi-Cal inpatient reimbursement liability (MIRL) for the fiscal

periods ending April 30, 1983, and April 30, 1984. These figures, designated as final settlements, reduced the reimbursement amounts for both periods. Palmdale requested an administrative adjustment, asserting as one ground that the MIRL notice for both fiscal years was untimely because it was not issued within three years of Palmdale's submission of its cost reports for those years. This claim was premised on the hospital's position that the three-year period set forth in Welfare and Institutions Code section 14170[1] applied to the issuance of a final settlement. The Department did not accept this position as an appealable item. Other substantive claims regarding the final settlement remain pending.

A similar pattern occurred at Vista Hill Hospital. In September 1984, Vista submitted its Medi-Cal cost report for the fiscal period ending December 31, 1983. On January 12, 1987, the Department issued its audit review of the cost report, and on October 10, 1989, it issued a MIRL determination reducing Vista's Medi-Cal reimbursement for the 1983 fiscal year. Vista requested an administrative adjustment, asserting as one ground that the notice of determination was not issued within three years of the submission of Vista's cost report and was therefore untimely. As with Palmdale, this contention was not accepted by the Department.

The two hospitals filed a petition for writ of mandate (Code Civ. Proc., § 1085) seeking an order directing the Department to rescind and void any notices issued outside of the three-year period of section 14170 of the Welfare and Institutions Code, and to pay the hospitals in accordance with the settlements issued within that period.

The hospitals asserted that the Department was collaterally estopped from relitigating the issue of its authority to alter Medi-Cal final settlements after the conclusion of the three-year period because the issue had been previously adjudicated by a Court of Appeal in a case entitled *Modesto City Hospital* v. *Department of Health Services* (Mar. 2, 1990) B042317. In an unpublished opinion in that case, another division of this district rejected the Department's position that it could alter final reimbursement settlements after the expiration of the three-year period of Welfare and Institutions Code section 14170. The Supreme Court denied the Department's petition to review the Court of Appeal decision.

---

[1]Section 14170 provides in pertinent part: "Cost reports and other data submitted by providers to a state agency for the purpose of determining reasonable costs for services or establishing rates of payment . . . for cost reporting periods beginning on January 1, 1972, and thereafter shall be considered true and correct unless audited or reviewed within three years after the close of the period covered by the report, or after the date of submission of the original or amended report by the provider, whichever is later."

The trial court ruled that the Department was estopped from contesting the application of the three-year limitation period, and granted the writ of mandate. It did not reach the merits of the parties' arguments about application of section 14170 of the Welfare and Institutions Code. The Department has appealed from the ensuing judgment.

DISCUSSION

I

*Collateral Estoppel*

■ The Department asserts that it is not collaterally estopped by the *Modesto City Hospital* case from litigating the merits of its position regarding the limitations period in section 14170. We agree.

Generally, a party to a prior action is collaterally estopped from relitigating issues which have been finally decided against it in the earlier action. (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098].) "But when the issue is a question of law rather than of fact, the prior determination is not conclusive either if injustice would result or if the public interest requires that relitigation not be foreclosed." (*Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 902 [160 Cal.Rptr. 124 [603 P.2d 41].)

In *City of Sacramento* v. *State of California* (1990) 50 Cal.3d 51, 64 [266 Cal.Rptr. 139 [785 P.2d 522], the Supreme Court held that the public interest exception precluded application of collateral estoppel against the state. In a previous published opinion, the Court of Appeal had decided that the state was obligated to reimburse the City of Sacramento and the County of Los Angeles for the cost of providing state-mandated unemployment insurance coverage. (See *City of Sacramento* v. *State of California* (1984) 156 Cal.App.3d 182 [203 Cal.Rptr. 258], hereafter *Sacramento I.*) The Supreme Court denied review in *Sacramento I.*

After the Legislature failed to fund the reimbursement costs, the City of Sacramento brought a class action against the state on behalf of all local governments in the state, seeking reimbursement of the funds paid for unemployment compensation (*City of Sacramento* v. *State of California, supra,* 50 Cal.3d 51, hereafter *Sacramento II*). Plaintiffs claimed that because *Sacramento I* was a final determination that the unemployment compensation requirement was a reimbursable state mandate, the state and its agents were collaterally estopped from relitigating that issue.

In rejecting that assertion, the Supreme Court observed that while the state was the only losing party in *Sacramento I*, the consequences of any error in

that case "transcend those which would apply to mere private parties. If the result of *Sacramento I* is wrong but unimpeachable, taxpayers statewide will suffer unjustly the consequences of the state's continuing obligation to fund the chapter 2/78 costs of local agencies. On the other hand, if the state fails to appropriate the funds to meet this obligation, and chapter 2/78 therefore cannot be enforced [citations], the resulting failure to comply with federal law could cost California employers millions. Under these circumstances, neither stare decisis nor collateral estoppel can permanently foreclose our ability to examine the reimbursability of chapter 2/78 costs." (*Sacramento II, supra*, 50 Cal.3d at pp. 64-65, fns. omitted.)

A similar result was reached in *California Optometric Assn.* v. *Lackner* (1976) 60 Cal.App.3d 500 [131 Cal.Rptr. 744], in which the court refused to collaterally estop the director of the Department of Public Health from challenging a judgment identical to that imposed against his predecessors in office. The court explained: "The courts will not apply [collateral estoppel] to foreclose the relitigation of an issue of law covering a public agency's ongoing obligation to administer a statute enacted for the public benefit and affecting members of the public not before the court." (*Id.* at p. 505; see also *City of Berkeley* v. *Superior Court* (1980) 26 Cal.3d 515, 520, fn. 5 [162 Cal.Rptr. 327 [606 P.2d 362]; *Rutherford* v. *State of California* (1987) 188 Cal.App.3d 1267, 1284 [233 Cal.Rptr. 781].)

Here, too, while the state Department of Health Services was the only losing party in *Modesto City Hospital*, that opinion, if wrong but unimpeachable, would shift to state taxpayers the cost of overpayments to Medi-Cal provider hospitals. And, as asserted by the Department in its unsuccessful petition for Supreme Court review[2] in the *Modesto City Hospital* case, a decision on this issue "affects virtually all the health care facilities in California who provide services to Medi-Cal beneficiaries."

This case also involves a public agency's ongoing obligation to administer statutes and regulations which were enacted for the benefit of the public. The public interest requires full litigation of the question, and application of collateral estoppel against the Department would therefore be unjust.

---

[2]The fact that the Supreme Court denied review of the *Modesto City Hospital* case does not affect our determination that the public interest exception to the collateral estoppel doctrine applies. The Supreme Court also denied review in *Sacramento I*, yet in *Sacramento II* held that the public interest exception prevented *Sacramento I* from collaterally estopping the state from relitigating the state's obligation to reimburse local governments. (See *Sacramento II, supra*, 50 Cal.3d at pp. 60, 64-65.)

## II

### *Adjustment of Reimbursement Settlement*

We turn now to the merits of this appeal. Plaintiffs assert that Welfare and Institutions Code section 14170 gives the Department three years from the date a hospital submits its cost report and related data to determine the final Medi-Cal payment owed to the hospital. We find this to be too broad a reading of that statute.

We begin our discussion with an overview of the Medi-Cal system, which is California's implementation of the federal Medicaid program (42 U.S.C. §§ 1396-1396s.) Medicaid is a cooperative federal-state program to provide medical assistance to persons unable to meet the costs of medical care. (*Wilder* v. *Virginia Hospital Assn.* (1990) 496 U.S. 498, 502 [110 L.Ed.2d 455, 462 [110 S.Ct. 2510].) The portion of the program involved in this case is the payment to health care providers for services rendered to qualified individuals under Medi-Cal.

When originally enacted in 1965, the Medicaid Act required states to reimburse health care providers for the "reasonable cost" of the hospital services rendered. (496 U.S. at p. 505 [110 L.Ed.2d 464].) Consistent with Medicaid, California's Medi-Cal program originally provided that hospital reimbursements be based on the "reasonable cost for such services." (Former Welf. & Inst. Code, § 14105, Stats. 1965, Second Ex. Sess., ch. 4, p. 115, § 2.)

In 1981, concern about rapidly rising Medicaid costs prompted Congress to replace the "reasonable cost" standard of hospital reimbursement with reimbursement rates that are " 'reasonable and adequate' to meet the costs of 'efficiently and economically operated facilities.' " (*Wilder* v. *Virginia Hospital Assn., supra,* 496 U.S. at pp. 506-507 [110 L.Ed.2d at p. 465].) In accordance with the change in the Medicaid standards, cost containment measures were introduced into the Medi-Cal reimbursement system.

During the fiscal years in question (and currently), Medi-Cal hospital reimbursement was governed by title 22, California Code of Regulations, section 51536, subdivision (a)[3], which provides: "Reimbursement for hospital inpatient services provided to Medi-Cal program beneficiaries shall be the lesser of the following for each hospital: [¶] (1) Customary charges. [¶]

---

[3] Further section references are to provisions of title 22 of the California Code of Regulations unless otherwise noted.

(2) Allowable costs determined in accordance with applicable Medicare standards and principles of reimbursement. [¶] All-inclusive rate per discharge." Reimbursement is further limited to "no more than the 60th percentile rate per discharge of the peer group to which the hospital is assigned by the Department." (§ 51539, subd. (b).)

As we have noted, Welfare and Institutions Code section 14170 provides that "[a]mounts paid for services provided to Medi-Cal beneficiaries shall be audited by the department in the manner and form prescribed by the department. The department shall maintain adequate controls to ensure responsibility and accountability for the expenditure of federal and state funds."

This auditing obligation contains the timing requirement which is at issue in this appeal: "Cost reports and other data submitted by providers to a state agency for the purpose of determining reasonable costs for services or establishing rates of payment shall be considered true and correct unless audited or reviewed by the department within 18 months after July 1, 1969, the close of the period covered by the report, or after the date of submission of the original or amended report by the provider, whichever is later. Moreover the cost reports and other data for cost reporting periods beginning on January 1, 1972, and thereafter shall be considered true and correct unless audited or reviewed within three years after the close of the period covered by the report, or after the date of submission of the original or amended report by the provider, whichever is later." (Welf. & Inst. Code, § 14170.)

The statute contains three exceptions to the three-year requirement: "Nothing in this section shall be construed to limit the correction of cost reports or rates of payment when inaccuracies are determined to be the result of intent to defraud, or when a delay in the completion of an audit is the result of willful acts by the provider or inability to reach agreement on the terms of final settlement."[4] (Welf. & Inst. Code, § 14170.)

Plaintiffs assert that the three-year period within which an audit or examination must be conducted constitutes a statute of limitations for any adjustment to the amount of a provider's reimbursement. But the *sole* consequence of the Department's failure to audit or review a provider's cost report or other data within three years is that such information "shall be considered true and correct." (Welf. & Inst. Code, § 14170.) Plainly, unless one of the statutory exceptions applies, the Department cannot question the information submitted by the provider once the three-year period has expired. This restriction, however, does not address the utilization of the data

---

[4]The parties agree that none of these exceptions is applicable to this case.

submitted in determining the actual amount of reimbursement a provider shall receive.

When the time requirement for auditing cost reports was added to the Welfare and Institutions Code, it was part of section 14105, which also contained the original standard for reimbursement for a health care provider: "Standards for costs shall be based on payments of reasonable cost for such services." (Welf. & Inst. Code, § 14105, Stats. 1969, ch. 21, § 38, p. 97.) At that time, the determination of the amount of reimbursement involved only the auditing of a hospital's cost report and a determination that the charges included in that report constituted the "reasonable cost for such services." The acceptance of the data contained in a cost report, either through an audit adjustment or by the passage of time within which an audit had to be performed under Welfare and Institutions Code section 14105, was virtually all that was required in order to determine the final amount of provider reimbursement for that fiscal year.

Once the cost containment measures were added to the Medi-Cal system, however, the audited data in the cost report became only one factor of the reimbursement determination. Reimbursement is now based on the lesser of the customary charges, the allowable costs determined in accordance with Medicare standards and principles of reimbursement, or the all-inclusive rate per discharge, limited further by the rate per discharge of a hospital's peer group. (§§ 51536, 51539; see also §§ 51537, 51538.) These alternative measures of a provider's reimbursable costs require calculations beyond the mere auditing of the hospital's cost report data. (See *Goleta Valley Community Hospital* v. *Department of Health Services* (1983) 149 Cal.App.3d 1124, 1132 [197 Cal.Rptr. 294].)

For example, the all-inclusive rate per discharge, which is retrospectively established for each hospital's tentative and final settlements, must be "updated annually to reflect reimbursable changes in factor input prices, service intensity, patient volume, and other items allowed through the administrative adjustment process and the appeals process." (§ 51536, subd. (c)(1)(B).)

Under section 51536, subdivision (g), "[a]n input price index shall be established to compute the reimbursable change in the prices of goods and services purchased by hospitals. The input price index shall consist of a market basket classification of goods and services purchased by hospitals, a corresponding set of market basket weights derived from each hospital's own mix of purchased goods and services, and a related series of price indicators." The market basket weights referred to are computed on the basis

of the most recent information contained in each hospital's Medi-Cal cost report, financial disclosure report, or other direct report of expenses. (§ 51536, subd. (g).) But the market basket classification used to establish the input price index is based on a series of price indicators from other sources, including the consumer price index, the producer price index, and the Bureau of Labor Statistics. (§ 51536, subd. (g)(3).)

Further information also must be utilized to determine the rate per discharge of a hospital's peer group, in order to comply with the limitation that reimbursement not exceed the 60th percentile of the rate per discharge of the individual hospital's peer group. (§ 51539, subd. (b).)

These provisions make it plain that the cost report and other data submitted by the provider at the close of its fiscal year constitute only a portion of the information necessary for determination of the provider's Medi-Cal reimbursement. The requirement of Welfare and Institutions Code section 14170 that the information in a provider's cost report be audited within three years or be considered true and correct cannot be read to include the additional data and further calculations required for application of the alternative Medi-Cal reimbursement formulae.

Recognition of the distinction between the audit procedure and the determination of the final reimbursement amount is found in the administrative appeal provisions. Welfare and Institutions Code section 14171, subdivision (a) provides: "The director shall establish administrative appeal processes to review grievances or complaints arising from the findings of an audit or examination made pursuant to [section] 14170." Welfare and Institutions Code section 14171, subdivision (b) provides: "Different administrative appeal processes may be established by the director for grievances or complaints arising from the determinations of a tentative or final settlement based on audit or examination findings made by or on behalf of the department pursuant to [section] 14170, except that consistent with existing practice, no administrative appeal shall be available for tentative settlement of cost reports."

Welfare and Institutions Code section 14171, subdivision (c) addresses "[t]he administrative appeal process established by the director for final settlements, including, in the case of hospitals, the application of Sections 51536, 51537, and 51539 of Title 22 of the California Code of Regulations . . . ." Welfare and Institutions Code section 14171, subdivision (d) addresses the administrative appeal process for tentative settlements, including application of the same regulations, which are the cost containment standards for Medi-Cal reimbursement.

These provisions differentiate between the findings of an audit or examination (Welf. & Inst. Code, § 14170, subd. (a)) and the determination of a tentative or final settlement based on those findings (Welf. & Inst. Code, § 14170, subds. (b), (c), (d)), and permit different review processes for each. It is only the former category, which involves the auditing of a provider's cost report or other data, which is subject to the time requirement of Welfare and Institutions Code section 14170. Reimbursement settlements utilizing that data, be they audited or merely accepted as true and correct because there was no timely audit, are not included within that section's three-year time requirement.

In the case before us, the Department completed its audits of the hospitals' cost reports and issued audit reports within three years, as required by Welfare and Institutions Code section 14170. The fact that its final settlements of the reimbursement determinations were not issued within the three-year period does not make them untimely, since section 14170 applies only to the auditing process, not to the final settlement process.[5]

In summary, we conclude that the trial court erred in holding that the Department was collaterally estopped from relitigating the application of the three-year time limitation in Welfare and Institutions Code section 14170 to its final reimbursement determinations. On the merits, we hold that this time limitation only restricts the authority of the Department to challenge the accuracy of data presented by a Medi-Cal health care provider, and does not apply to a final determination by the Department based on that data and other statutory factors.

---

[5]This analysis does not address the issue of what limitation applies to a final settlement of the reimbursement determination if Welfare and Institutions Code section 14170 does not. Since that subject was not covered in the regular briefing, we requested letter briefs on the point. Understandably, the hospitals argued that there is no other applicable provision because section 14170 does apply. The Department argued that there is no applicable limitations period. It also asserted that since any change in the final settlement would seek a repayment from the provider, the only prejudice that might occur would be to the Department. Even if we were to accept the premise that changes would only be by way of repayment to the Department, it would not follow that delay only benefits the providers. Health care providers have an interest in closing their books on a particular period, and going forward without the encumbrance of contingent claims.

Nevertheless, it does appear that the Legislature has not provided an explicit limitation on the time the Department has within which to issue a final reimbursement determination. We need not, and do not, decide whether Code of Civil Procedure section 343 (four-year period for relief not otherwise provided in limitations chapter), or some other provision of that code, is applicable. We observe, however, that courts have inherent power to dismiss administrative proceedings where there has been an unreasonable delay with resulting prejudice. (See *Gates v. Department of Motor Vehicles* (1979) 94 Cal.App.3d 921, 925 [156 Cal.Rptr. 791].)

## DISPOSITION

The judgment is reversed. Parties to bear their own costs on appeal.

Woods (A. M.), P. J., and Taylor, J.,* concurred.

A petition for a rehearing was denied September 2, 1992, and respondents' petition for review by the Supreme Court was denied October 29, 1992.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.