Filed 2/11/25; Certified for Publication 3/10/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CALIFORNIA HEALTHCARE & REHABILITATION CENTER et al., | C098043 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2021-80003603-CU-WM-GDS) |
| v. | |
| MICHELLE BAASS, as Director, etc., et al., | |
| Defendants and Respondents. | |

Plaintiffs are several skilled nursing facilities[1] that seek to challenge defendants', the State Department of Health Care Services and Michelle Baass (in her capacity as

---

[1] Plaintiffs are California Healthcare & Rehabilitation Center, Casa Bonita Convalescent Hospital, Colonial Care Center, Covina Rehabilitation Center, Eastland Subacute and Rehabilitation, Imperial Crest Health Care Center, Intercommunity Healthcare & Rehabilitation Center, Longwood Manor Convalescent Hospital, Park Anaheim Healthcare Center, Shea Rehabilitation Healthcare Center, Sherman Village Health Care Center, Studio City Rehab Center, Western Convalescent Hospital, Balboa Nursing and Rehabilitation Center, Moraga Post Acute, Pleasant Hill Post Acute, Providence All Saint's Sub-Acute, Providence McClure, Providence Ontario, Providence

1

Director) (collectively Department), purported formula used to calculate Medi-Cal reimbursement overpayments made by the Department to plaintiffs. Plaintiffs filed a petition for traditional writ of mandate pursuant to Code of Civil Procedure[2] section 1085 and a complaint for declaratory relief pursuant to section 1060, alleging the Department violated a ministerial duty and adopted a regulation in violation of the Administrative Procedure Act (Gov. Code, § 11340 et seq.) by utilizing an overpayment formula based on the amount Medicare paid plaintiffs for ancillary services instead of on the amount Medi-Cal overpaid for those services.

The trial court sustained the Department's demurrer without leave to amend, finding plaintiffs' claim was not cognizable in a traditional writ of mandate proceeding and, alternatively, that plaintiffs failed to state a claim the Department violated a ministerial duty or adopted an underground regulation. Separately, the trial court denied plaintiffs' motion to compel discovery of various documents the Department utilizes while training its employees because it found the documents were privileged.

We conclude some of plaintiffs' claims are cognizable in a traditional writ of mandate proceeding and the petition states a claim for relief that the Department utilizes an underground regulation when calculating Medi-Cal reimbursement overpayments. We further conclude plaintiffs have failed to meet their burden of providing an adequate record for us to review whether the trial court erred by denying their motion to compel. Accordingly, we reverse the judgment of dismissal and affirm the trial court's order denying plaintiffs' motion to compel.

---

San Bruno, Providence San Francisco, Providence Sun Villa, Providence Valley Pointe, Providence Waterman, San Joaquin Nursing and Rehabilitation Center, and Capital Transitional Care.

[2]      Further undesignated section references are to the Code of Civil Procedure.

FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the facts as detailed in the trial court's order, and thus we will adopt those facts here. We add factual allegations from the petition relevant to this appeal.

"[Plaintiffs] are skilled nursing facilities . . . operating subacute units. Subacute units provide services to patients requiring less intensive services than those provided in an acute care hospital but more intensive than those provided to general patients in skilled nursing facilities. In addition to the general subacute services provided, [plaintiffs] also provide ancillary services including physical therapy, speech therapy, occupational therapy, and certain medical supplies. [¶] Medicare is a federal healthcare program for the elderly and disabled. Medi-Cal is a state-administered program for medical assistance to low-income persons who meet certain criteria. [The Department] administers the Medi-Cal program. [Plaintiffs] participate in Medicare and Medi-Cal programs and have received payments from both. Under [California] Code of regulations, title 22, sections 51005 and 50761, Medi-Cal is mandated to be the payor of last resort, meaning a facility has to seek reimbursement from other coverage, including Medicare, before seeking reimbursement from Medi-Cal.

"Medi-Cal has a different payment process than Medicare does. Medi-Cal generally pays an all-inclusive, facility-specific, per-diem rate to [skilled nursing facilities]. The per-diem rates are calculated based on actual costs that the facility reported to the Department. Medicare, on the other hand, pays facilities on a per-item basis. If [a skilled nursing facility] patient has *both* Medi-Cal *and* Medicare, and Medi-Cal makes a payment on a per-diem basis and Medicare makes a payment on a per-item basis, there may be double payment for the same ancillary services.

"The Legislature directs the Department to conduct audits on such Medi-Cal overpayments. (Welf. & Inst. Code, § 14170.) The Department 'shall recover overpayments to providers including . . . payments determined to be: . . . (9) For Medi-

3

Cal covered services already paid for by the beneficiary, but not yet refunded, or for services already reimbursed by the Department or other coverage.' (Cal. Code Regs., tit. 22, § 51458.1.)  After an audit, the Department recovers any overpayments made to providers.  The Department provides an appeal procedure regarding the findings of an audit.  ([Cal. Code Regs., tit. 22,] § 51016[] et seq.; Welf. & Inst. Code, § 14171.)"

Plaintiffs filed the petition seeking a traditional writ of mandate under Code of Civil Procedure section 1085 and declaratory relief under section 1060.  Plaintiffs alleged "that in the situations where Medicare and Medi-Cal made a double payment, the Department has been recovering the 'overpayment' within the meaning of [California Code of Regulations, title 22, section] 51458.1 by taking away the amount that Medicare paid instead of the amount that Medi-Cal actually paid [(overpayment formula)]. According to [plaintiffs], this incorrect method of determining the overpayment is a violation of the Department's duty to recoup the correct amount of overpayment. [Plaintiffs] also allege that the Department has abused its discretion or exceeded its authority by adopting this method as an underground regulation."

Some plaintiffs had previously appealed the results of their individual audits to the Office of Administrative Hearings and later to the superior court.  In *Covina Rehabilitation Center v. Kent* (Super. Ct. Sac. County, 2018, No. 34-2017-80002761-CU-WM-GDS) (*Covina*), the Superior Court found for some plaintiffs, reasoning the Department's use of the overpayment formula did not properly calculate the amount the Department overpaid in Medi-Cal benefits.  The petition states that, despite this ruling, the Department still utilizes the overpayment formula during the audits of all plaintiffs.

In the petition, plaintiffs requested as relief, in relevant part, that the trial court (1) declare the Department's overpayment formula "contrary to law, an abuse of discretion, and in violation of its ministerial duties;" (2) require the Department to return funds to plaintiffs that were collected pursuant to the overpayment formula; and (3) enjoin the Department from utilizing the overpayment formula in the future.

4

The Department filed a demurrer to the petition, and the trial court sustained the demurrer without leave to amend. Accordingly, the court entered judgment in favor of the Department.

Plaintiffs appeal.

DISCUSSION[3]

I

*Plaintiffs' Petition Is Cognizable Under Section 1085*

The Department contends plaintiffs must pursue a writ of administrative mandate under section 1094.5 instead of a writ of traditional mandate under section 1085 as they attempt to do in this case. We disagree.

"The appropriate type of mandate is determined by the nature of the administrative action or decision under review. In general, 'quasi-judicial' or 'adjudicative acts,' that is, acts that involve the actual application of a rule to a specific set of existing facts are reviewed by administrative mandamus under . . . section 1094.5. [Citation.] [¶] More specifically, a petition for administrative mandamus under . . . section 1094.5 is appropriate when the party seeks review of a final 'determination, finding, or decision of a public agency, made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is

---

[3]    Plaintiffs' request for judicial notice of a document issued by the Department explaining the coordination of benefits between Medi-Cal and Medicare, as well as a proposed trailer bill to purportedly strengthen the coordination of benefits, is denied as irrelevant. (See *Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569 [judicial notice is confined to those matters that are relevant to the issue at hand].) Plaintiffs seek judicial notice to demonstrate the Department cannot avail itself of the argument that the correct overpayment calculation is too complicated for a court to resolve. Because the issues raised in this appeal pertain to whether the petition states claims the Department violated a ministerial duty or adopted an underground regulation, our ability to resolve the accuracy of an overpayment calculation is irrelevant.

5

vested in a public agency.' " (*California Water Impact Network v. Newhall County Water Dist.* (2008) 161 Cal.App.4th 1464, 1482 (*Newhall*).)

"In contrast, the actual formulation of the rule itself constitutes a 'quasi-legislative' act and is reviewed by ordinary mandate [under section 1085]. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 168-169 [adoption of guidelines interpreting coastal access provisions constituted quasi-legislative agency action because guidelines governed future permit decisions rather than the application of the rules to a particular case . . . ]; *Wal-Mart Stores, Inc. v. City of Turlock* (2006) 138 Cal.App.4th 273, 299-300 [traditional mandate [is] the proper vehicle to challenge constitutionality of city's zoning ordinance][, disapproved on another ground in *Hernandez v. City of Hanford* (2007) 41 Cal.4th 279, 297].) A petition for traditional mandamus is appropriate in other actions brought to attack, review, set aside, or void a quasi-legislative (where in general no evidentiary hearing is held) or ministerial determination, or decision of a public agency." (*Newhall*, *supra*, 161 Cal.App.4th at p. 1483, fn. omitted.)

Plaintiffs' petition alleges the Department uses an overpayment formula it adopted contrary to law and in contravention of its ministerial duties and requests a declaration stating so, as well as an injunction against the Department from utilizing the overpayment formula in the future. Determining whether the Department's purported overpayment formula is lawful and complies with its ministerial duties is an issue reserved for traditional writ of mandate proceedings that review the propriety of quasi-legislative acts and ministerial determinations. (See *Newhall*, *supra*, 161 Cal.App.4th at p. 1483.) Accordingly, plaintiffs' petition is cognizable under section 1085.

Still, plaintiffs requested relief also includes reimbursement of funds that were improperly taken pursuant to the overpayment formula during each plaintiffs' individual audit. Determining whether plaintiffs are entitled to relief in this regard, "involve[s] the actual application of a rule to a specific set of existing facts," which is "reviewed by

6

administrative mandamus under . . . section 1094.5." (*Newhall, supra,* 161 Cal.App.4th at p. 1482.) In any event, plaintiffs insist they are not challenging specific audit findings in this lawsuit. Thus, to the extent plaintiffs seek review of their individual audits to determine damages individual plaintiffs are entitled to recover, that review is reserved for an administrative mandate proceeding under section 1094.5 and not cognizable here.

## II

### *The Trial Court's Order Sustaining The Demurrer Must Be Reversed*

Plaintiffs argue the petition sufficiently provides they did not need to exhaust their administrative remedies, as well as states a claim under sections 1085 and 1060 because the Department's use of the overpayment formula violated a ministerial duty and constituted an underground regulation. We agree plaintiffs had no administrative remedies to exhaust and that they stated a claim the overpayment formula constitutes an underground regulation.

### A

### *Applicable Standard*

"When reviewing a judgment dismissing a [petition] after the [sustaining] of a demurrer without leave to amend, courts must assume the truth of the [petition's] properly pleaded or implied factual allegations. [Citation.] Courts must also consider judicially noticed matters. [Citation.] In addition, we give the [petition] a reasonable interpretation, and read it in context. [Citation.] If the trial court has sustained the demurrer, we determine whether the [petition] states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, . . . we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

7

B

*Plaintiffs Adequately Pled Exhaustion Of Administrative Remedies*

The Department argues plaintiffs have not exhausted their administrative remedies by appealing their audit determinations to the Office of Administrative Hearings before resorting to court.  The Department, however, cites to authority pertaining to only challenges to individual audits and not challenges to the Department's adoption and application of the overpayment formula.  (Citing Welf. & Inst. Code, §§ 14170, subd. (a)(1) ["Amounts paid for services provided to Medi-Cal beneficiaries shall be audited by the [D]epartment in the manner and form prescribed by the [D]epartment"], 14171, subds. (a) ["The director shall establish administrative appeal processes to review grievances or complaints arising from the findings of an audit or examination"] & (j) ["The final decision of the director shall be reviewable in accordance with [s]ection 1094.5 . . . within six months of the issuance of the director's final decision"]; Cal. Code Regs., tit. 22, §§ 51016 et seq. [article supplying procedure for health care providers' appeal of the Department's audit], 51458.1, subd. (a)(10) ["The Department shall recover overpayments to providers including, but not limited to, payments determined to be" "[f]or services that should have been billed to other coverage"].)

Plaintiffs argue there is no avenue to challenge the Department's adoption and application of the overpayment formula and cite to authority allowing for an appeal but only of the Department's audit findings.  (Citing Welf. & Inst. Code, § 14171 ["The director shall establish administrative appeal processes to review grievances or complaints arising from the findings of an audit or examination . . . and for final settlements"]; Cal. Code Regs., tit. 22, § 51017 ["A provider may request a hearing . . . to examine any disputed audit or examination finding [that] results in an adjustment to Medi-Cal program reimbursement or reimbursement rates"].)  We have not found any statutory or regulatory provision, and the Department points us to none, permitting a challenge to the Department of its policies or adopted formulas.  Accordingly, plaintiffs

8

have adequately pled exhaustion of administrative remedies. (*Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.* (2010) 190 Cal.App.4th 1502, 1523-1524 [the exhaustion requirement does not apply if there is no administrative remedy].)

C

*Plaintiffs Have Not Sufficiently Alleged The*

*Department Failed To Comply With A Ministerial Duty*

A traditional writ of mandate under section 1085 will issue on a showing of: (1) a clear, present, and usually ministerial duty upon the part of the government agency; and (2) a clear, present, and beneficial right in the petitioner to the performance of that duty. (*City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 925-926.) "Generally, mandamus may be used only to compel the performance of a duty that is purely ministerial in character. [Citation.] The remedy may not be invoked to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular way. [Citation.] 'A ministerial act has been described as "an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her or their] own judgment or opinion concerning such act's propriety or impropriety, when a given set of facts exists." [Citation.] On the other hand, discretion is the power conferred on public functionaries to act officially according to the dictates of their own judgment.' " (*Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 1002-1003; see *US Ecology, Inc. v. State of California* (2001) 92 Cal.App.4th 113, 138.)

Plaintiffs contend the Department has a duty to calculate overpayments accurately and, citing broad language from *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, argue our Supreme Court has found a ministerial duty in circumstances like here. Not so. In *City of Dinuba*, our Supreme Court said, "It is undisputed that [the county] had a duty to correctly calculate and distribute the tax revenue. Nor can it be disputed [the] plaintiffs had a beneficial right in [the county] doing so. It follows then that

9

mandamus provides an appropriate remedy for [the county's] failure to comply with [its] statutory duty." (*Id*. at p. 868.) What plaintiffs fail to note, is that the county in *City of Dinuba* was required to calculate and distribute tax revenue pursuant to a detailed and specific statutory and regulatory framework. (*Id*. at p. 866.)

Here, by contrast, plaintiffs have cited statutory and regulatory authority requiring only that Medi-Cal be the payor of last resort and the Department to calculate Medi-Cal overpayments. (Citing Welf. & Inst. Code, §§ 14000, subd. (b) [Medi-Cal benefits "shall not duplicate those provided under other federal or state law" or other entitlements], 14005, subd. (a) [intent of the Legislature is for Medi-Cal to be the payor of last resort], 14005.9 [Medicare and health insurance deductibles are included in the "spend down" formula to calculate eligibility for Medi-Cal], 14023.7 [healthcare providers must first seek reimbursement through private and public health insurance providers before seeking reimbursement through Medi-Cal]; Cal. Code Regs., tit. 22, §§ 50761 [a beneficiary is not entitled to Medi-Cal coverage until other health care coverages have been exhausted or denied]; 51005, subd. (a)(2) [provides method of calculating reimbursements], 51037, subd. (i) [requirements of a formal hearing, including that the Department has the burden of proving the audit findings], 51458.1, subd. (a)(9) ["The Department shall recover overpayments to providers including, but not limited to, payments determined to be" "[f]or Medi-Cal covered services . . . already reimbursed by . . . other coverage"].)[4]

No authority cited by plaintiffs prescribes a certain method of calculating *overpayments*. To the extent a method is provided by the authority cited, it is about how to calculate Medi-Cal *reimbursements* when Medicare also provides coverage. (Cal.

---

[4]    Plaintiffs also cite California Code of Regulations, title 22, section 51258.1, subdivision (a)(9) as authority for the Department's ministerial duties. This appears to be a typographical error. This regulation does not exist. Instead, it appears plaintiffs are referring to California Code of Regulations, title 22, section 51458.1, subdivision (a)(9).

Code Regs., tit. 22, § 51005, subd. (a)(2) ["the maximum reimbursement by Medi-Cal shall be the amount established for similar services . . . , less the amount paid by Medicare. In the event the Department cannot for any reason establish the amount it would have paid for similar services, the maximum reimbursement shall be the amount of the Medicare deductible and coinsurance claimed"].) Instead, the authority cited by plaintiffs leaves overpayment calculations to the discretion of the Department.

Still, plaintiffs argue that, while there is no mandatory duty to calculate overpayments in a particular way, there is a mandatory duty not to calculate overpayments the way the Department is currently calculating overpayments. Specifically, plaintiffs argue, the statutory and regulatory scheme mandates that Medi-Cal is the payor of last resort, meaning plaintiffs are entitled to keep the Medicare reimbursement and Medi-Cal must recoup as an overpayment the portion allocated to the ancillary service of the per diem rate Medi-Cal already paid. We disagree.

The portion of the per diem rate for a particular patient that is allocated to ancillary services is not tied to the ancillary services that a particular patient received. Instead, it is based on a provider's reported overall costs of providing subacute and ancillary services divided into a per diem rate. Thus, a technical breakdown of the per diem rate received for a particular patient includes compensation for services not provided as well as partial payment for services provided to that particular patient. But when considering the aggregate of costs and patients treated by subacute providers such as plaintiffs, Medi-Cal is designed to compensate providers for their all-inclusive costs as determined by a contract for services (Welf. & Inst. Code, § 14132.25, subd. (b); Cal. Code Regs., tit. 22, § 51511.5, subds. (a), (d), (f)(1)), rendering reimbursement above the contracted rate an overpayment.

Plaintiffs argue *Covina*, the prior case finding the Department's use of the overpayment formula unlawful, prevents us from making this conclusion under the doctrine of collateral estoppel, now referred to as issue preclusion. (*DKN Holdings*

11

*LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) Even assuming *Covina* meets the elements of issue preclusion, public policy prohibits its application. "[E]ven where the minimal prerequisites for invocation of the doctrine are present, [issue preclusion] ' "is not an inflexible, universally applicable principle; policy considerations may limit its use where the . . . underpinnings of the doctrine are outweighed by other factors." ' " (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829.) The public interest exception to issue preclusion was applied in *City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 57, where the issue was whether local governments were entitled to reimbursement under article XIII B of the California Constitution for the cost of providing mandatory unemployment insurance coverage. Our Supreme Court held the state was not bound by a prior judgment because "the consequences of any error transcend those [that] would apply to mere private parties" and any error in the former judgment would adversely affect taxpayers and employers statewide. (*City of Sacramento*, at pp. 64-65.)

Similarly, in *Palmdale Hospital Medical Center v. Department of Health Services* (1992) 8 Cal.App.4th 1306, 1309-1311, the appellate court held that a prior unpublished opinion of the Court of Appeal did not bar the Department from challenging a trial court's ruling concerning the finality of its determination of reimbursement owed to the hospitals for Medi-Cal services. The court concluded the "case . . . involves a public agency's ongoing obligation to administer statutes and regulations [that] were enacted for the benefit of the public." (*Id*. at p. 1311.) The court reasoned that while the Department was the only losing party in the prior case, "that opinion, if wrong but unimpeachable, would shift to state taxpayers the cost of overpayments to Medi-Cal provider hospitals" and that decision " 'affects virtually all the health care facilities in California [that] provide services to Medi-Cal beneficiaries.' " (*Ibid*.)

Like *City of Sacramento* and *Palmdale*, the issue here concerns the Department's ongoing statutory obligations. Further, any error in *Covina* would affect millions of

12

taxpayers and numerous subacute healthcare facilities throughout the state. Plaintiffs attempt to distinguish *City of Sacramento* and *Palmdale* because the losing government agencies in those cases pursued appeals until denied review in our Supreme Court. Contrary to plaintiffs' assertion, this is not a meaningful distinction. Our Supreme Court's analysis in *City of Sacramento* did not include an analysis of whether the government agency adequately exhausted appellate remedies but instead focused on the content and character of the issue being decided. (*City of Sacramento v. State of California*, *supra*, 50 Cal.3d at pp. 64-65.) We shall do the same.[5] Accordingly, the public interest exception applies to this case to prevent issue preclusion.

In reply, plaintiffs cite *James Square Nursing Home, Inc. v. Wing* (N.D.N.Y. 1995) 897 F.Supp. 682, 687-688, for the proposition that the Department's overpayment formula was utilized by another state and declared invalid. The procedural posture of *James Square* was different than the case at bar. There, the plaintiffs challenged individual audits through the state administrative appeals process and then sued the relevant state agency in the United States District Court for the Northern District of New York alleging the state's formula was invalid under federal statutes. (*Id*. at pp. 685, 687-688.) Here, in contrast, plaintiffs do not allege causes of action under federal law, nor are they challenging the findings of an audit. Accordingly, *James Square* is distinguishable and does not provide a basis to review plaintiffs' state law claims. As a result, plaintiffs have failed to state a claim based on a violation of ministerial duties for purposes of a traditional writ of mandate under section 1085 or a declaratory action under section 1060.

---

[5]     The Department's request for judicial notice of the Sacramento Superior Court's 2017 decision in *Buena Park Nursing Center et al. v. Department of Health Services et al.*, case No. 34-2014-80001878-CU-WM-GDS, is denied as irrelevant. Because we conclude the public interest exception to issue preclusion applies, there is no need to assess purported conflicting judgments for the purposes of determining whether issue preclusion applies.

13

D

*Plaintiffs Sufficiently Alleged The Overpayment Formula*

*Constitutes An Underground Regulation*

Traditional writ of mandate under section 1085 applies to challenge quasi-legislative decisions defined as those involving formulation of a rule to be applied to all future cases. (*Beach & Bluff Conservancy v. City of Solana Beach* (2018) 28 Cal.App.5th 244, 259.) For example, state agencies must adopt regulations following the procedures established in the Administrative Procedure Act. These procedures, among other things, require state agencies to provide the public with notice of proposed regulations (Gov. Code, §§ 11346.4, 11346.5), give interested parties an opportunity to comment on proposed regulations (Gov. Code, § 11346.8), and respond in writing to submitted written comments (Gov. Code, §§ 11346.8, 11346.9). Regulations wrongly adopted outside these procedures are known as underground regulations and are void. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 572-573 (*Tidewater*); see Cal. Code Regs., tit. 1, § 250, subd. (a)(1).)

An agency policy is a regulation subject to the Administrative Procedure Act if it meets two conditions. "First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency's] procedure.' " (*Tidewater*, *supra*, 14 Cal.4th at p. 571.)

Plaintiffs contend the Department is prohibited from utilizing the overpayment formula because it amounts to an underground regulation in violation of the Administrative Procedure Act. Again, plaintiffs allege the overpayment formula is the Department's calculation that the Medi-Cal reimbursement overpayment for ancillary services equals the Medicare reimbursement in cases involving coverage by both

14

programs. To demonstrate the Department uses the overpayment formula as a matter of policy for cases involving ancillary services covered by both Medi-Cal and Medicare, plaintiffs point to their own past and present auditing experiences. The Department contends plaintiffs have not met their burden for failing to cite to documents or statements about the purported policy, and it insists each audit stands on its own and is calculated on a case-by-case basis. For the purposes of a demurrer, plaintiffs have the better argument.

As an initial matter, it is not determinative that plaintiffs cannot point to a written policy. (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 332, 336.) Plaintiffs are merely required to point to a rule the agency applies generally that implements the laws the agency administers. (*Tidewater*, *supra*, 14 Cal.4th at p. 571.) The overpayment formula clearly implements the overpayment calculation laws the agency administers. (See Cal. Code Regs., tit. 22, § 51005, subd. (a)(2).)

Plaintiffs' petition also sufficiently alleges the Department's actions amount to a rule or policy, rather than something that applies to specific cases. (*Tidewater*, *supra*, 14 Cal.4th at p. 571.) Plaintiffs are 26 skilled nursing facilities from three different parent companies that received per diem Medi-Cal reimbursements for providing subacute health care services, including ancillary services, that then billed Medicare for the ancillary services. The petition provides that, throughout multiple auditing periods for these 26 facilities, the Department calculated Medi-Cal reimbursement overpayments for all ancillary services by selecting the Medicare reimbursement amount received for those ancillary services. The petition implies the Department calculated the entirety of the Medicare reimbursement as the Medi-Cal reimbursement overpayment regardless of whether the contracted Medi-Cal per diem rate fully compensated plaintiffs for the actual cost of the services provided to a particular patient. While the overpayment formula is not alleged to apply to all cases presented to the Department, plaintiffs sufficiently allege it is applied on more than a case-by-case basis and instead to all subacute providers that

15

also provide ancillary services to patients who qualify for both Medi-Cal and Medicare coverage.

The Department's reliance on *Excelsior College v. Board of Registered Nursing* (2006) 136 Cal.App.4th 1218 to argue plaintiffs' allegations are cursory and insufficient is misplaced. There, the Board of Registered Nursing had recognized for more than 20 years a New York college's distance learning program as equivalent to the minimum requirements of accredited programs in California, allowing the college's graduates to apply for nursing licenses in California. (*Id*. at pp. 1224, 1226.) The nursing board, however, changed course and notified the out-of-state college of the following decision: " 'Excelsior College graduates, like other out-of-state graduates, must meet the requirements set forth in California Business and Professions Code [s]ection 2736[, subdivision ](a)(2) and California Code of Regulations [s]ection 1426, including the requirement of supervised clinical practice concurrent with theory, in order to be eligible for examination and licensure as a California registered nurse. This eligibility requirement applies to students who enrolled at Excelsior on or after December 6, 2003.' " (*Excelsior College*, at p. 1227.) The out-of-state college sued, contending the above-quoted decision announced an equivalency standard that constituted an underground regulation. (*Id*. at pp. 1239-1240.) We concluded the decision was not an underground regulation because it did not announce a standard other than the standard provided by statute. (*Id*. at p. 1239.)

Here, by contrast, the alleged overpayment formula does not restate the statutory standard of calculating Medi-Cal reimbursement overpayments but sets forth a particular method of calculating overpayments for a certain class of providers and services. Thus, the alleged overpayment formula serves to "predict[] how the agency will decide future cases," which is the standard for an underground regulation. (*Tidewater*, *supra*, 14 Cal.4th at pp. 574-575.) The overpayment formula "is not necessarily wrong just because it is set forth in a void underground regulation. The policy interprets controlling

state law, and that interpretation may be correct." (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 560.) The problem is, as alleged in the petition, the Department did not comply with the Administrative Procedure Act before utilizing the overpayment formula as a general matter. Accordingly, plaintiffs have sufficiently pled the overpayment formula constitutes an underground regulation.

## III

### *Plaintiffs Have Not Provided An Adequate Record To Review Whether The Court Erred By Denying Their Motion To Compel*

Plaintiffs contend the trial court's denial of their motion to compel discovery after an in camera review of purported Department training documents the Department claimed were privileged was erroneous. Plaintiffs argue the trial court was "[e]ntirely [u]nreasonable" and that the trial court's order following the in camera review "was not supported by substantial evidence."

Plaintiffs, however, did not request the documents the trial court reviewed in camera in their notice of designation of the appellate record. Because we are unable to conduct an independent in camera review of the contested documents, we cannot determine whether the trial court abused its discretion or committed any other reversible error. (See *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 [the standard of review for a motion to compel discovery is abuse of discretion and factual findings are upheld if supported by substantial evidence]; see also *People v. Codinha* (2021) 71 Cal.App.5th 1047, 1081 [appellate courts independently review allegedly privileged documents in camera before determining whether the trial court abused its discretion by denying a motion to compel discovery].) Accordingly, plaintiffs have not provided an adequate record to review whether the trial court erred by denying their motion to compel and we will not address the contention. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [the plaintiff has the burden of

17

providing an adequate record and the failure to do so requires resolution against plaintiff on the issue].)

## DISPOSITION

The order denying plaintiffs' motion to compel is affirmed.  The judgment of dismissal is reversed, and the matter is remanded to the trial court with directions to vacate its order sustaining without leave to amend the Department's demurrer to the operative complaint and to enter a new order overruling the demurrer.  Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
ROBIE, Acting P. J.



We concur:



/s/
MAURO, J.



/s/
MESIWALA, J.

18

Filed 3/10/25

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CALIFORNIA HEALTHCARE & REHABILITATION CENTER et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> MICHELLE BAASS, as Director, etc., et al., <br><br> Defendants and Respondents. | C098043 <br><br> (Super. Ct. No. 34-2021-80003603-CU-WM-GDS) <br><br> ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |

APPEAL from a judgment of the Superior Court of Sacramento County, Stephen P. Acquisto, Judge.  Reversed.

Hooper, Lundy & Bookman, Stanton J. Stock, Joseph R. LaMagna and Maydha Vinson for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Maryam Toossi Berona, Deputy Attorneys General, for Defendants and Respondents.

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, IIB, IIC, and III of the Discussion.

1

THE COURT:

The opinion in the above-entitled matter filed on February 11, 2025, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be partially published in the Official Reports and it is so ordered.


BY THE COURT:


 /s/
ROBIE, Acting P. J.


 /s/
MAURO, J.


 /s/
MESIWALA, J.

2